1

2

3

4

5

6

7

8                           IN THE UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   PRIYANKA KHANNA,

11              Plaintiffs,                      No. CIV S-09-2214 KJM GGH

12       vs.

13   INTER-CON SECURITY SYSTEMS,
     INC., et al.,                              ORDER
14
                Defendants
15   _____/

16          The court heard argument on plaintiffs' motion for an order granting preliminary

17   approval of a proposed class and collective action settlement on June 17, 2011.  Isaac Stevens

18   and Jeffrey Edwards appeared for plaintiff; Jeff Grube appeared for defendants.  After

19   considering the parties' submission, the court GRANTS the request in part and DENIES it in

20   part for the reasons set forth below.

21   I.  Background

22          On August 11, 2009, plaintiff Shashi Khanna, suing individually and as successor

23   in interest of Amankumar Khanna, and all others similarly situated, filed a complaint against

24   Inter-Con Security Systems, Inc., d/b/a Healthcare Security Services Group, and Enrique

25   Hernandez, Neil Martau, Lance Mueller, Roland Hernandez, Paul Miller, Michael Marcharg,

26   Jeanne Gervin, Michale Sutkaytis, Jana Fanning, Brittany Moore, Catherine Ross, Linda Saayad,

                                               1

Mark Chamberlin, and James Latham.  She alleged generally that her deceased husband, Amankumar Khanna, was employed as a security guard by defendant Inter-Con Security Services (Inter-con), also doing business as Healthcare Security Services Group (HSSG), to provide security services to defendants' customers, including Kaiser Foundation Hospitals and the State of California.  ECF No. 1 ¶¶ 8-9.  Inter-con required Khanna and others in his position to work more than eight hours a day or forty hours a week without overtime compensation under the pretense that HSSG was a separate entity and so any hours attributed to HSSC were not overtime as to Inter-con.  *Id*. ¶¶ 11-12.  The complaint contained six causes of action: (1) violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq*., for failure to pay overtime wages; (2) violation of California Labor Code §§ 218.6, 510, 511, 558, 1194, 1198 and 1199 for failure to pay overtime wages; (3) violation of California Labor Code §§ 201, 202, 203, 204, 1194 and 1199 for failure to pay full wages when due; (4) violation of California Labor Code §§ 226, 226.3, 1174 and 1174.5 for failure to adhere to California law regarding accurate wage statements; (5) violation of California Business and Professions Code § 17200 (UCL), unfair business practices stemming from defendants' failure to pay legally required wages, to pay wages when due and to provide itemized statements of hours worked; and (6) a claim under California's Private Attorneys' General Act (PAGA), California Labor Code § 2699.3, based on the previously described Labor Code violations.  Plaintiff also sought certification as an FLSA collective action and a class action for the state claims.

Defendants filed a motion to dismiss or to strike portions of the second, third, fourth, fifth and sixth causes of action and some of the claims for relief.  ECF No. 22. Specifically defendants asked the court to strike the class action allegations on the ground that plaintiff, as successor in interest to her husband's claim, was not an adequate class representative.  It also sought to strike the collective action allegations on the ground that plaintiff is not similarly situated to actual employees.  It also asked the court to dismiss plaintiff's attempt to recover civil penalties under the PAGA and the claims for injunctive relief

1   and for violation of California Business and Professions Code § 17200.  The court granted

2   defendant's motion to dismiss plaintiff's claim for injunctive relief, finding that she lacked

3   standing and her PAGA claim, finding that a right to bring suit under those provisions is not

4   assignable and so did not survive Mr. Khanna's death.  It otherwise denied the motion.  ECF No.

5   31.

6         On August 3, 2010, the court granted plaintiff's unopposed request to substitute

7   as plaintiff Priyanka Khanna, daughter of Amankumar and Shashi Khanna, in light of the death

8   of Shashi Khanna.  ECF No. 43.

9         Plaintiff has now filed a motion for an order granting preliminary approval of a

10  proposed class and collective action settlement, provisionally certifying the class and collective

11  actions, approving the proposed notice and directing its dissemination, and setting a schedule for

12  the final approval process.  ECF No. 52.  In very basic terms, the proposed settlement requires

13  defendants to pay a maximum of $390,000, which is partially reversionary, which will cover

14  payments to class members, Khanna's class representative payment, counsel's fees and costs,

15  employer payroll taxes on amounts characterized as wages, and the claims administrator's fees

16  and costs.  *Id*.  The proposed class consists of plaintiff and all current and former non-exempt

17  Security Officers whose combined hours for work at Inter-Con and HSSG during the same work

18  week exceeded eight hours in one day or forty hours during any such week, for which they were

19  not paid overtime during the period from August 11, 2005 to February 26, 2009.  *Id*. at 11.

20  II.  Analysis

21        The complaint in this case includes both a federal claim under the FLSA and state

22  wage-and-hour and unfair business practices claims; the instant motion seeks to broaden the

23  action to one including a group of employees who worked for both Inter-Con and HSSG for

24  more than eight hours during a work day or forty hours during a given week without receiving

25  overtime pay.

26  /////

1    Under the FLSA, an employer must pay a non-exempt employee at a rate not less

2 than time and a half his or her regular rate of pay if the employee works more than forty hours in

3 one week. 29 U.S.C. § 207(a)(1); *Troy v. Kehe Food Distributors, Inc*., 276 F.R.D. 642, 647

4 (W.D. Wash. 2011).  An employee may pursue an FLSA action to recover unpaid overtime

5 wages and may bring the action "for and in behalf of himself or themselves and other employees

6 similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his

7 consent in writing to become such a party . . . " 29 U.S.C. § 216(b); *Knepper v. Rite Aid Corp*.,

8 675 F.3d 249, 257 (3d Cir. 2012).  Accordingly, an employee must "opt-in" to the FLSA action

9 to be bound by its resolution.

10    Similarly in California, an employer must pay an employee at the rate of one and

11 a half times the usual rate of pay for work over eight hours in any day or forty hours in any

12 week; a failure to pay overtime may also give rise to a number of other violations of California

13 labor law relating to payment of complete wages upon termination and the provision of proper

14 wage statements as well as a violation of California's prohibition of unfair business practices.

15 Cal. Lab. Code §§ 201, 202, 226(a), 510; Cal. Bus. & Prof. Code § 17200; *Sullivan v. Oracle*

16 *Corp*., 51 Cal. 4th 1191, 1205 (2011).  When a state wage and hour case is pursued as a class

17 action under Rule 23(b)(3), a potential class member must be given the opportunity to "opt-out"

18 of the action.  *See* Fed. R. Civ. P. 23(c); *Ervin v. OS Restaurant Services, Inc*., 632 F.3d 971, 976

19 (7th Cir. 2011).  Because of these differences, courts have held that employees cannot use opt-

20 out class actions to enforce the FLSA, but rather must bring a collective action.  *Knepper*, 675

21 F.3d at 257.  And despite the differences in the two types of actions and the potential for

22 confusion, courts have held that employees may pursue a "hybrid" or combined opt-in FLSA

23 action and opt-in class action to enforce state wage and hour laws. *Id*.; *Wang v. Chinese Daily*

24 *News, Inc*., 623 F.3d 743, 760 (9th Cir. 2010), *vacated on other grounds*, ___ U.S. ___, 132 S.Ct.

25 74 (2012); *Murillo v. Pacific Gas & Electric Co.,* 266 F.R.D. 468, 472 (E.D. Cal. 2010).

26 /////

4

1        When the parties reach settlement before class certification, the court must satisfy

2    itself that class certification is proper and that the settlement is fair. *Staton v. Boeing*, 327 F.3d

3    938, 952 (9th Cir. 2003).  Despite the parties' agreement, their stipulation that the class should

4    be certified is not sufficient; instead the court "must pay undiluted, even heightened attention to

5    class certification requirements." *Anchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)

6    (internal quotations marked omitted); *Murillo,* 266 F.R.D. at 473.  Similarly the court cannot

7    simply accept the parties' resolution but must also satisfy itself that the proposed settlement is

8    "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026

9    (9th Cir. 1998).  Finally, the court must ensure that the class members "receive 'the best notice

10   that is practicable under the circumstances.'" *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131

11   S.Ct. 2541, 2558 (2011) (quoting FED. R. CIV. P. 23(c)(2)(B)). After the initial certification and

12   notice to the class, the court then conducts a fairness hearing before finally approving any

13   proposed settlement. *Narouz v. Charter Communications, Inc.*, 591 F.3d 1261, 1266-67 (9th Cir.

14   2010).

15       The court must engage in a similar process before the FLSA claim may proceed

16   as a collective action. *Lewis v. Vision Value, LLC*, No. 1:11-cv-01055 LJO-BAM, 2012 WL

17   2930867, at *2 (E.D. Cal. July 18, 2012).  Although the Ninth Circuit has not spoken on the

18   question, most district courts in this circuit follow a two step process.  First the court undertakes

19   an initial inquiry to determine whether plaintiff is similarly situated to the proposed class so that

20   notice may be sent to the potential class members. *Troy v. Kehe Food Distributors*, 276 F.R.D.

21   at 649; *Leuthold v. Destination America*, 224 F.R.D. 462, 466 (N.D. Cal. 2004).  The court also

22   determines whether "'the settlement is a fair and reasonable resolution of a bona fide dispute.'"

23   *Lewis v. Vision Value, LLC.*, 2012 WL 2930867, at *2 (quoting *Yue Zhou v. Wang's Restaurant*,

24   No. C 05-0279 PVT, 2007 WL 2298046 (N.D. Cal. Aug. 8, 2007)).  At the second stage, after

25   class members have opted in, the court employs a stricter standard in determining whether a

26   collective action is warranted and whether the ultimate settlement is fair. *Knipsel v. Chrysler*

1   *Group, LLC*, No. 11-11886, 2012 WL 553722, at *1 (E.D. Mich. Feb. 21, 2012); *Khait v.*

2   *Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106, at *7 (E.D.N.Y. Jan. 20, 2010).

3          Because the standards for certifying an FLSA class and evaluating the fairness of

4   an FLSA settlement are less stringent than those imposed by Rule 23, some courts have found

5   the FLSA requisites satisfied by a showing that Rule 23 requirements have been met.  *See, e.g.,*

6   *Clesceri v. Beach City Investigations & Protective Services, Inc.*, No. CV-10-3873-JST (Rzx)

7   2011 WL 320998, at *4 (C.D. Cal. Jan. 27, 2011).

8          In this case, plaintiff has presented very little information other than the proposed

9   settlement and proposed class notice and has largely relied on the declaration of counsel.

10  Ultimately, the court will require more sufficient information before it resolves the motion.  *See,*

11  *e.g., Harris v. U.S. Physical Therapy*, No. 2:10-cv-1508-JCM-VCF, 2012 WL 3277278, at *4

12  (D. Nev. July 18, 2012) (citing the Manual For Complex Litigation (Fourth) (2008) § 1314)

13  (class settlement), *report and recommendation adopted*, 2012 WL 3277276 (D.Nev. Aug 9,

14  2012); *Troy*, 276 F.R.D. at 649.  Plaintiff thus will need to provide more substantial evidence

15  supporting the necessary inquiries at the fairness hearing.  *See Alberto v. GMRI, Inc.*, 252 F.R.D.

16  652, 661 n.5 (E.D. Cal. 2008).

17          A.  FLSA–Certification

18          At the notice stage, "the Court requires little more than substantial allegations,

19  supported by declarations or discovery, that the putative class members were together the victims

20  of a single decision, policy, or plan." *Troy v. Kehe Food Distributors*, 276 F.R.D. at 649

21  (internal quotation marks, citations omitted).

22  /////

23  /////

24  /////

25  /////

26  /////

The proposed class is defined as follows:

[a]ll current and former hourly Security Officers who performed work for both Inter-Con and the corporation, ICSS Holding Corp., dba Healthcare Security Services Group ("HSSG") during the same workweek ("overlapping workweeks") in California and had combined hours of greater than 8 on any day of such overlapping workweek or greater than 40 for such overlapping workweek for which they were not paid overtime premiums for all combined overtime hours during those overlapping workweeks ("qualifying overlapping workweeks"), at any time from August 11, 2005 (four years prior to the filing of the Action), to February 26, 2009 (when HSSG stopped employing Security Officers). . . .

Memorandum of Agreement (MOU), ECF No. 52-1 at 13.

Plaintiff represents that the class is appropriate for FLSA certification because the class members all were subject to defendants' "single practice of . . . not paying overtime premiums due as a result of work for both Inter-Con and HSSG." ECF No. 52. Although plaintiff has not provided any proof of a formal policy or plan, the definition of the proposed class suggests "that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA.'" *Li v. A Perfect Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2011 WL 4635198, at *5 (N.D. Cal. Oct. 5, 2011) (quoting *Russell v. Wells Fargo & Co.*, 07-CV-3993 CW, 2008 WL 4104212 (N.D. Cal. Sep. 3, 2008)). This is sufficient at this stage of the proceedings.

B.  Rule 23–Certification

A party seeking to certify a class must demonstrate that he has met the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Anchem Products, Inc. v. Windsor*, 521 U.S. at 614; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011). Although the parties have stipulated that a class exists for purposes of settlement, the court must nevertheless undertake the Rule 23 inquiry independently, both at this stage and at the later fairness hearing. *West v. Circle K. Stores*, No. Civ S-0400438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 12, 2006).

7

Before certifying a class, this court must be satisfied that:

> (1) the class is so numerous that joinder of all members is impracticable (the "numerosity" requirement); (2) there are questions of law or fact common to the class (the "commonality" requirement); (3) the claims or defenses of representative parties are typical of the claims or defenses of the class (the "typicality" requirement); and the representative parties will fairly and adequately protect the interests of the class (the "adequacy of representation" inquiry).

*Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) (quoting *In re Intel Securities Litigation*, 89 F.R.D. 104, 112 (N.D. Cal. 1981)); *see also* FED. R. CIV. P. 23(a). The court must also determine whether the proposed class satisfies Rule 23(b)(3), on which plaintiff relies in this case; to meet the requirements of this subdivision of the rule, the court must find that "'questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and effectively adjudicating the controversy." *Dukes*, 131 S.Ct. at 2558 (quoting FED. R. CIV. P. 23(b)(3)).

### 1. Numerosity

Although there is no absolute numerical threshold for numerosity, courts have approved classes consisting of thirty-nine, sixty-four and seventy-one. *Murillo*, 266 F.R.D. at 474 (citing *Jordan v. L.A. County*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982)). Plaintiff estimates the instant class to consist of somewhere between sixty one and seventy members. ECF Nos. 52 at 20 & 52-1 at 49.

### 2. Commonality

To satisfy the commonality requirement, plaintiffs must do more than show "that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. at 2551. The claims must depend upon a common contention that "must be of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of those claims in one

1   stroke." *Id*.  It is not so much that the class raises common questions: what is necessary is "the

2   capacity of a classwide proceeding to generate common *answers* . . . ." *Id*.  "[T]he merits of the

3   class members' substantive claims are often highly relevant when determining whether to certify

4   a class." *Ellis*, 657 F.3d at 981.

5          Here, given the narrow nature of the class claims and narrow definition of the

6   class,[1] it appears the commonality requirement has been satisfied.  Not only does the class raise

7   common questions, but the class action may generate a class-wide answer to the question

8   whether the relationship between Inter-Con and HSSG and their use of the same employees led

9   to a violation of the state's overtime laws, which led to a failure to generate accurate wage

10  statements and constituted an unfair business practice.  *See Jimenez v. Allstate Ins. Co*., No. LA

11  CV10-08486 JAK (FFMx), 2012 WL 1366052, at *16 (C.D. Cal. Apr. 18, 2012) (recognizing

12  that CAL. LAB. CODE § 203 and UCL claims are derivative of overtime claim).  Moreover there

13  is no suggestion in the pleadings that the answer to the class-wide question depends on Inter-

14  Con's individualized exercise of discretion.  At this stage the court finds the commonality

15  requirement has been met.

16          3.  Typicality

17          "'[T]he commonality and typicality requirements of Rule 23(a) tend to merge'"

18  because both act "'as guideposts for determining whether maintenance of a class action is

19  economical and whether the named plaintiff's claim and the class claims are so interrelated that

20  the interests of the class members will be fairly and adequately represented in their absence.'"

21  *Dukes*, 131 S.Ct. at 2551 n.5 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S.

22  147, 157-58 n.13 (1982)).  A court resolves the typicality inquiry by considering "whether other

23

24          [1]  The wording of the proposed notice suggests it will be sent only to those employees
     who have already been identified as "non-exempt" and thus entitled to overtime pay.  If the court
25   will not have to determine whether an employee is non exempt, a "fact-intensive individual
     analysis," it is more likely plaintiff has established commonality.  *See Chavez v. Lumber*
26   *Liquidators, Inc.*, No. CV-09-4812 SC, 2012 WL 1004850, at *5 (N.D. Cal. Mar. 26, 2012).

members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis*, 657 F.3d at 984 (internal quotation marks, citation omitted); *Morales v. Stevco, Inc.*, No. 1:09-cv-00704 AWI JLT, 2011 WL 5511767, at *6 (E.D. Cal. Nov. 10, 2011).  In this case, it appears the class members suffered the same injury when they worked more than eight hours in a single day or more than forty hours in a single week for the two entities and that plaintiff's claim and those of the class members are based on the same legal theory.  This satisfies the typicality inquiry.  *Murillo*, 266 F.R.D. at 575; *Clesceri*, 2011 WL 320998, at *5.

### 4.  Adequacy of Representation

To determine whether the named plaintiff will protect the interests of the class, the court must explore two factors: (1) do the named plaintiff and her counsel have any conflicts of interest with the class as a whole and (2) have the named plaintiff and counsel vigorously pursued the action on behalf of the class.  *Hanlon*, 150 F.3d at 1020; *see also Clersceri*, 2011 WL 320998, at *6 ("(1) the class representative must not have interests antagonistic to the unnamed class members, and (2) the representative must be able to prosecute the action 'vigorously through qualified counsel.'") (internal citation omitted).

Nothing in the papers presently before the court suggests that plaintiff has any conflicts of interest with the class members: as her claim is "completely aligned with [that] of the class," there is no conflict.  *Collins*, 274 F.R.D. at 301.

"Although there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation."  *Hanlon*, 150 F.3d at 1021.  In addition, a named plaintiff will be deemed to be adequate "as long as [she] has some basic knowledge of the lawsuit and is capable of making intelligent decisions based upon [her] lawyers' advice. . . ."  *Kaplan v. Pomerantz*, 131 F.R.D. 118, 121-22 (N.D. Ill. 1990).

1    Plaintiff's counsel has described his experience and that of his firm generally in

2 labor law cases and specifically in class actions.  Declaration of David Mastagni, ECF No. 52-1

3 at 2-3.  This is sufficient.  He also has explained that he agreed to settlement only after

4 undertaking research into the viability of the claims, pursuing discovery, and considering

5 whether a release of "all claims, known and unknown, that were brought or could have been

6 brought" in the earlier case of *Adams v. Inter-Con Security Systems, Inc.*, 3:06-cv-05428 N.P.,

7 2007 WL 33559596 (N.D. Cal. 2007), relating to overtime payments for attending pre-shift

8 meetings, could foreclose the current claims.  ECF No. 52-1 at 5-6 ¶¶ 18-19.  This representation

9 by counsel does not undercut a finding of vigor.

10    At the earlier motion to dismiss stage, defendants challenged the adequacy of the

11 class representative, arguing that plaintiff did not have personal knowledge of the conduct

12 underlying the claims.  Motion to Strike or Dismiss, ECF No. 22-1 at 12-14.  The court rejected

13 this argument, noting that the claims survived Mr. Khanna's death and that any motion to strike

14 the class allegations before discovery was premature.  ECF No. 31 at 4-5.[2]  As part of the

15 settlement, however, defendants have agreed that the action may proceed as a class action for

16 settlement purposes.  ECF No. 52-1 at 13.  In addition, counsel describes the hours plaintiff and

17 her now-deceased mother have devoted to the case.  ECF No. 52-1 at 6 ¶ 22.  At least at this

18 stage of the litigation, plaintiff is an adequate class representative.  *Gen'l Telephone Co. v.*

19 *Falcon*, 457 U.S. 147, 160 (1982) (finding of adequacy "particularly during the period before

20 any notice is sent to members of the class 'is inherently tentative'").

21 /////

22 _____

23    [2]  The court did dismiss the request for injunctive relief, however, because plaintiff lacked standing.  *Id*. at 10-11.  Although this may suggest that plaintiff is not an adequate representative, it may make little difference to the litigation in light of the fact that HSSG no

24 longer provides security services and the risk of the situation described in the complaint repeating itself is minimized.  *See* ECF No. 52-1 at 6 ¶ 19 (defendant has ceased providing

25 security services for Kaiser); *Ellis*, 657 F.3d at 986 (former employee may not be adequate representative because did not share interest with current employees whose goals may include

26 injunctive relief).

5.  Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Anchem Products*, 521 U.S. at 623.  Although it is similar to Rule 23(a)'s commonality requirement, it is more demanding. *Id.* at 624.  To determine whether common questions predominate, the court must consider "the relationship between the common and individual issues" by looking at the questions that preexist any settlement. *Hanlon*, 150 F.3d at 1022.  "Courts commonly certify class actions pertaining to wage and hour issues, as common questions often predominate over individual questions." *Clesceri*, 2011 WL 320998, at *7.  Common issues may predominate even if "putative class members will be entitled to individualized damages depending on the amount of overtime worked." *Murillo*, 266 F.R.D. at 477.

In addition, the predominance inquiry focuses on the "notion that adjudication of common issues will help achieve judicial economy." *In re Wells Fargo Home Mortgage Overtime Pay Litigation*, 571 F.3d 953, 958 (9th Cir. 2009) (internal quotation marks & citation omitted).

As noted above, with the single issue stemming from an apparently uniform policy, a narrowly defined class, and little suggestion that there will be individual issues apart from the calculation of individualized damages, the class action will promote efficiency by allowing a number of claims to be litigated simultaneously.  At this stage, the predominance requirement has been met.

6.  Superiority

In resolving the Rule 23(b) superiority inquiry, the court should consider class members' interests in pursuing separate actions individually, any litigation already in progress involving the same controversy, the desirability of concentrating the litigation in one forum and potential difficulties in managing the class action, although the last two are not relevant to a pre-certification settlement. *Anchem Products*, 521 U.S. at 615-16, 620.

Here, if each class member were to sue, he or she would bring essentially the same claim for a relatively small amount of money and yet might have to litigate the scope of the *Adams* release. A class action is superior to individual resolution of the overtime claims.

C. The Settlement

The proposed settlement contains the following provisions: a maximum amount of $390,000 "inclusive of all settlement payments to Settlement Class Members; Plaintiff's class representative payment; Class Counsel's attorney's fees and expenses; payroll taxes; and the Settlement Administrator's fees and expenses." ECF No. 52-1 at 13 ¶ 3 & 52-1 at 29 ¶ 32. Of the net settlement amount, that is, the amount of the fund to be paid to class members, two-thirds shall be applied to the state law claims and is non-reversionary. ECF No. 52-1 at 13 ¶¶ 4, 5a.[3] One-third of the net settlement amount shall be allocated to the FLSA claims but shall revert to Inter-Con if not claimed by class members' returning opt-in forms. *Id*. ¶ 5B. Fifty percent of the payments will be treated as wages, subject to deductions for payroll taxes and withholding. *Id*. at 14 ¶ 6. Inter-Con will not oppose class counsel's application for fees and costs not to exceed $130,000, or one-third of the maximum settlement payment, or a request for a class representative payment of $10,000 in addition to plaintiff's share of the class settlement. ECF No. 52-1 at 31 ¶¶ 44-45.

The settlement contemplates that by submitting a timely claim form for an allocated share, a class member will thereby opt-in to the FLSA collective action and will be so notified. ECF No. 52-1 at 34 ¶ 54. The notice packet will also include an exclusion form to allow any potential class member to opt-out of the class for the state law claims. *Id*. at 36 ¶ 58. Class members who do not submit exclusion forms will be bound by the settlement and release of state law claims, but not the FLSA claims. *Id*. at 36 ¶ 59. Class members who submit a claim form will be bound by the settlement and release of the FLSA claims as well. *Id*. If class

---

[3] Although the breakdown is in the Memorandum of Agreement, it is not in the Settlement Agreement itself.

members submit both exclusion and claim forms, the exclusion form will be disregarded.  *Id*. at 37 ¶ 60.

Class members who submit valid exclusion forms will not be permitted to file objections to the settlement, but those who return claim forms may also submit objections to the settlement itself as well as the application for attorney's fees and will be given the opportunity to appear at the fairness hearing if they give notice of their intent to appear.  ECF No. 52-1 at 35 ¶ 57 & 37 ¶ 61.  Class members who dispute the Administrator's approximation of their share of the settlement amount, which will be included on the claim form and which the Administrator will calculate based on information supplied by Inter-Con, must submit a written, signed challenge along with any supporting documentation to the Claims Administrator, who will resolve the challenge without a hearing.  ECF No. 52-1 at 38 ¶¶ 65-67 & 34 ¶50.

The releases provide that class members release and discharge Inter-Con, along with successors, assigns, and its current and former employees and directors as well as the individual defendants

> from any and all claims, known or unknown, that were brought or could have been brought in the operative complaint in the Action, including but not limited to, statutory, constitutional, contractual or common law claims for wages, damages, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, for the following categories of allegations: (a) allegations for unpaid wages; unpaid overtime compensation; unpaid hourly premiums; failure to pay overtime compensation based on the regular rate of pay or otherwise; and any and all claims for the failure to provide meal and/or rest periods; and (b) any and all claims for recordkeeping or pay stub violations or waiting time penalties or any other statutory penalties ("Released Claims"), arising from the period from August 11, 2005, through the date of final Court approval of the Settlement ("Released Period").  Released claims include claims meeting the above definition under any and all applicable statutes (other than the FLSA), including without limitation the California Labor Code (including, but not limited to, sections 201, 202, 203, 204, 210, 218.6, 226, 226.3, 227.3, 510, 511, 558, 1174, 1174.5,

/////

/////

1194, 1198, 1199 and 2698, *et seq.*); the wage orders of the California Industrial Welfare Commission; California Business and Professions Code section 17200, *et seq.*; and the California common law of contract.

ECF No. 52-1 at 39 ¶ 68.  In addition, the claimants "fully release and discharge Released Persons from any and all claims, debts, liabilities, demands, obligations, penalties, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action of whatever kind or nature under the FLSA, whether known or unknown, that were alleged or that reasonably could have arisen out of Plaintiffs' allegations in the Action up to and including the date the Court grants final approval of the material terms of the Settlement." *Id.* at 39-40 ¶ 78.  Finally, class members who do not submit valid exclusion forms "acknowledge that the Settlement is intended to include in its effect all claims which were or could have been asserted in the Action, including any claims that each Class Member does not know or suspect to exist in his or her favor against Released Persons.  Consequently, with regard to claims that were brought or reasonably could have arisen out of the facts Plaintiffs allege in the Action, the Class Members also waive all rights and benefits afforded by section 1542 of the California Civil Code, and do so understanding the significance of that waiver." *Id.* at 40 ¶ 70.  In return, Qualified Claimants (defined as class members who timely submit a valid claim form), will receive their "allocated share" (defined as the pro rata portion of the Final Settlement Payment). *Id.* at 30 ¶ 36.

The agreement provides that "if 10% or more of the Class Members or a number of Class Members whose share of the Class Settlement Proceeds represents 10% or more of the available Net Settlement Amount, validly elect not to participate in the Settlement, or if fewer than 50% of the Settlement Class Members submit Claim Forms and validly opt into the Fair Labor Standards Act settlement, or the number of Class Members who do not submit Claim Forms represents 40% or more of the total share of the Net Settlement Amount, Inter-Con will have the sole and exclusive right to rescind the Settlement and the Settlement and all actions taken in furtherance will be null and void.  Inter-Con must exercise this right within 14 calendar

days after the Settlement Administrator notifies the parties of the valid elections not to participate and the participation rate on submission of claims forms . . . ."  ECF No. 52-1 at 43 ¶ 76.

If the court finally approves the settlement, the Administrator will mail settlement checks to those who filed claim forms.  The checks will remain negotiable for ninety days after mailing; thereafter the Administrator will void the checks and return the value of uncashed checks to Inter-Con.  A class member's failure to cash the check will be deemed an irrevocable waiver of any right to the Allocated Share but will not relieve the claimant of the binding effect of the settlement agreement.  ECF No. 52-1 at 37 ¶ 63.

### 1.  FLSA

A court may not approve an FLSA settlement without determining whether it is "a fair and reasonable resolution of a bona fide dispute."  *Lewis v. Vison Value, LLC*, 2012 WL 2930867, at \*2 (internal citation & quotation mark omitted); *see also Khait v. Whirlpool Corp.*, 2010 WL 2025106, at \*7 ("courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes").  "If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages. . ., the court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'"  *Lepinske v. Mercedes Homes, Inc.*, No. 6:07-cv-915-Orl-31 DAB, 2008 WL 2694111, at \*1 (M.D. Fla. Jul. 7, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).  As part of the inquiry the court must also consider the proposed service payments to the named plaintiff and the attorney's fees.  *Grove v. ZW Tech, Inc.*, Civil Action No. 11-2445-KHV, 2012 WL 1789100, at \*7 (D. Kan. May 7, 2012).

### a.  Bona Fide Dispute

To show that there is a bona fide dispute, the parties must provide sufficient information about the following subjects: (a) the nature of the dispute; (b) the employer's business and the work performed by the employees; (c) the employer's reasons for disputing the

right to overtime; (4) the employees' justification for the disputed wage; and (5) the parties' estimates of the number of hours worked and the applicable wage if the parties dispute the computation. *Id*. at *4.

As noted above, the parties' initial submissions are fairly abbreviated. Nevertheless, the pleadings provide enough information for this preliminary determination: the parties dispute whether Inter-Con and HSSG were so allied as to be a single entity, so that work as a security guard for one entity was in fact work for another, subject to federal and state overtime protection. The court's preliminary determination that this is a bona fide dispute is bolstered by the fact that defendants pursued a motion to dismiss and the parties met with a mediator in attempting to reach the instant resolution. ECF No. 52-1 at 6 ¶ 20 (describing the private mediation).

b.  Fair And Reasonable

In determining whether the FLSA settlement is reasonable, the court should consider whether "the proposed settlement reflects a reasonable compromise over contested issues." *Khait*, 2010 WL 2025106, at *7. Among the factors relevant to this determination are the course of the negotiations, the existence of any factual or legal questions that place the outcome of the litigation in doubt, the benefits of immediate recovery balanced against litigation, and the parties' belief the settlement is fair. *Grove*, 2012 WL 1789100, at *5.

Plaintiff's counsel explains that the existence of the class action settlement in *Adams v. Inter-Con Security Systems, Inc*., No. 06-5428 MHP (N.D. Cal. 2007), a dispute about overtime wages for training and its accompanying release, had the potential to foreclose any claims in this case that arose before March 1, 2008, yet the claims in this action likely extended only to March 2009. ECF No. 52-1 at 6 ¶¶ 18-19. The potential impact of the *Adams* litigation on this case supports a finding that the ultimate resolution is fair.

Nevertheless, the court finds it difficult to determine the ultimate reasonableness of the settlement for two reasons. First, counsel has provided no information about the potential

17

1  range of recovery.  *See Lewis*, 2012 WL 2930867, at *2 (considering among other things

2  whether "the amounts proposed as settlement are proportionate to the damages Plaintiffs could

3  have obtained if they proceeded to trial").  Second, there is no explanation why the portion of the

4  settlement earmarked for the FLSA is reversionary.  When a statute's objectives include

5  deterrence, as does the FLSA's, "it would contradict these goals to permit the defendant to retain

6  unclaimed funds."  *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1308

7  (9th Cir. 1990); *LaParne v. Monex Deposit Co.*, No. SACV 08-0302 DOC (MLGx), 2010 WL

8  4916606, at *4 (C.D. Cal. Nov. 29, 2010) ("[r]elatively low interest in settlement does not mean

9  that Defendant should receive a windfall benefit as a result of absent class members failing to

10  submit claims" in light of the deterrent effect of the FLSA).

11  <center>c. Attorneys' Fees And Representative Payment</center>

12  As noted, it also is difficult to evaluate these factors given the paucity of

13  information supporting the claims for fees and the incentive payment for the representative.  If

14  the class representative devoted significant time to the case, then the additional payment may be

15  justified.  *Sandoval v. Roadlink USA Pacific, Inc.*, No. EDCV 10-00973 VAP(DTBx), 2011 WL

16  5443777, at *12 (C.D. Cal. Oct. 9, 2011) (factors for evaluating incentive payment); *but see*

17  *Kalani v. Oracle Corp.*, No. C 06-06493, 2007 WL 1793774, at *10 (N.D. Cal. Jun. 19, 2007)

18  (questioning incentive payment).  At this stage, however, the court does not find the fees that

19  may be sought militate against the fairness of the settlement.

20  2. Rule 23

21  "At this preliminary approval stage, the court need only 'determine whether the

22  proposed settlement is within the range of possible approval.'"  *Murillo*, 266 F.R.D. at 479

23  (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).  A number of factors bear

24  on the inquiry:

25  the strength of plaintiff's case; the risk, expense, complexity, and
   likely duration of further litigation; the risk of maintaining class
26  action status throughout the trial; the amount offered in settlement;

<center>18</center>

1   the extent of discovery completed, and the stage of the
    proceedings; the experience and views of counsel; . . . and the
2   reaction of the class members to the proposed settlement.

3   *Hanlon*, 150 F.3d at 1026; *Morales*, 2011 WL 5511767, at *9. The court must also consider the

4   value of the settlement offer and whether the settlement is the result of collusion. *Class*

5   *Plaintiffs v. Seattle*, 955 F.2d 1268, 1290, 1291 (9th Cir. 1992).

6           As noted above, there is a possibility that the releases in the earlier *Adams* case

7   could restrict recovery in this overtime litigation. Moreover, there was a risk that Inter-Con

8   would challenge the class certification on a number of grounds, including those mentioned in the

9   court's resolution of the motion to strike. Both of these factors suggest that the settlement is

10  within the range of possible approval. In addition, the fact that the parties reached agreement

11  after mediation suggests that the settlement is not collusive and that the settlement is a rational

12  compromise of the parties' positions. *Murillo*, 266 F.R.D. at 479.

13          Nevertheless, as noted above, counsel has not given the court any estimate of the

14  potential recovery should the case be resolved on summary judgment or at trial, so the court does

15  not have sufficient information to determine even preliminarily whether the settlement is within

16  the range of possible approval. *Collins*, 274 F.R.D. at 302 (a court must "'consider the

17  plaintiffs' expected recovery balanced against the value of the settlement offer'" (quoting *in re*

18  *Tableware Antitrust Litigation*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). Second, without

19  more information about the strengths and weaknesses of the case the court cannot determine

20  whether the release of meal and rest break claims is within the range of possible approval. *Id.* at

21  303 (finding settlement proper when the "released claims appropriately track the breadth of

22  Plaintiffs' allegations in the action and the settlement does not release unrelated claims that class

23  members may have against defendants"). Without this information, the court cannot make a

24  preliminary determination of the "overall fairness" of the proposed settlement. *Clesceri*, 2011

25  WL 320998, at *8.

26  /////

1    Finally, although twenty-five percent of a common fund is the benchmark for

2 class action settlement attorneys' fees in the Ninth Circuit, the court at this stage does not find

3 that the proposal for fees necessarily renders the settlement unfair.  *Morales*, 2011 WL 5511767,

4 at *12.

5    D.  Appointment Of The Class Administrator

6    Apart from a few paragraphs in the proposed Settlement Agreement identifying

7 CPT Group as the Settlement Administrator, plaintiff has not otherwise identified the entity or

8 provided any information about its experience in administering class settlements or why it was

9 selected.  ECF No. 52-1 at 30 ¶ 39 & 32 ¶ 47; *see Marlin v. National City Mortgage, Inc*., No.

10 05-1499 SC, 2007 WL 4208336, at *1 (N.D. Cal. Nov. 27, 2007).  In addition, as noted above,

11 the settlement agreement does not address the administrator's fee.  Without this information, the

12 court declines to appoint CPT Group as Class Administrator.

13    E.  Class Notice

14    For any class certified under Rule 23(b)(3), "the court must direct to class

15 members the best notice that is practicable under the circumstances."  Fᴇᴅ. R. Cɪᴠ.P.

16 23(c)(2)(B).  In an FLSA action, "the court must provide potential plaintiffs 'accurate and timely

17 notice concerning the pendency of the collective action, so that they can make informed

18 decisions about whether or not to participate.'"  *Adams v. Inter-Con Security Systems*, 242

19 F.R.D. 530, 539 (N.D. Cal. 2007) (quoting *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 170

20 (1989)).

21    In this case, the parties propose that the notice should be sent by first class mail,

22 which, when coupled with the Administrator's duty to confirm class members' addresses through

23 various databases, appears to be sufficient.  *Id*. at 541; ECF No. 52-1 at 34 ¶52.

24    The notice itself, however, is not sufficient in many ways.  First, it tells class

25 members that the notice may "affect your legal rights related to your employment," which

26 suggests an adverse job action rather than an opportunity to recover improperly withheld

20

overtime.  ECF No. 52-1 at 49.  Second, the notice suggests that all class members are

automatically part of the FLSA collective action, but then notifies them that they must opt-in to

the FLSA action.  ECF No. 52-1 at 53 ¶¶ 17 & 18.  To avoid confusion in an opt-in/opt-out

hybrid action, "a carefully worded Rule 23 class notice" must be prepared.  *Harris v. Vector*

*Marketing Corp.*, 753 F. Supp. 2d 996, 1019 (N.D. Cal. 2010).  Here, the parenthetical

concerning the binding effect of the failure to return a claim form as to the Rule 23 class and the

FLSA action is confusing.  Third, the notice should make clear that a class member who submits

a claim form may still object to the settlement.  In addition, the procedure is cumbersome,

requiring the class member to file a notice[4] with the Clerk and the Administrator and serve both

counsel.  It should be noted that any filing on this court's docket will be served on counsel or the

Administrator can provide the necessary documents.  The procedure currently proposed thus

seems unnecessarily cumbersome.  *See Kagan v. Wachovia Securities, LLC.*, Nos. 09-5337 SC,

11-0412 SC, 2012 WL 1109987, at *10 (N.D. Cal. Apr. 2, 2012).  Fourth, although the

settlement agreement contemplates one process for objecting to the settlement and another for

objecting to attorneys' fees, the notice's section about objections mentions only the "terms of the

Settlement," while the section concerning attorneys' fees suggests that only the court and

counsel will be involved in determining the appropriate fees.  ECF No. 52-1 at 53 ¶¶ 16, 19; ECF

No. 52-1 at 35 ¶ 57 (different times for objection to settlement and to attorneys' fees).  In

addition, it is not clear why two objections are necessary.  Fifth, the notice tells class members

they may exclude themselves by sending the appropriate form "via First Class U.S. Mail, or the

equivalent" without explaining acceptable equivalents.  ECF No. 52-1 at 54 ¶ 20.  Sixth, the

notice is silent as to the possibility that Inter-Con may withdraw from the settlement depending

on the response to the notice, a factor that might bear on a class member's decision whether to

participate.

---

[4]  Class members are told to include their birthdates, even though complete birthdates
should not be included on any court filings.  L.R. 140(a)(iv).

F. Class Counsel

In light of counsel's experience in wage and hour class action litigation, the court appoints Mastagni, Holstedt, Amick, Miller & Johnsen as class counsel.

IT IS THEREFORE ORDERED that:

1.  Mastagni, Holstedt, Amick, Miller & Johnsen is appointed as class counsel;

2. Preliminary certification of the class and the collective action is granted;

3. Preliminary approval of the settlement is denied without prejudice;

4. Approval of the proposed notice is denied without prejudice; and

5. The parties may submit further information about the settlement and a new proposed notice within forty-five days of the date of this order.

DATED:  September 24, 2012.

_____
UNITED STATES DISTRICT JUDGE

22