IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PRIYANKA KHANNA,

            Plaintiffs,                    No. CIV S-09-2214 KJM GGH

       vs.

INTER-CON SECURITY SYSTEMS,
INC., et al.,                  ORDER

            Defendants
_____/

        The court has considered plaintiff's renewed request for an order granting preliminary approval a proposed class and collective action settlement and, for the reasons stated below, GRANTS the request.

I. <u>Background</u>

        On August 11, 2009, plaintiff Shashi Khanna, suing individually and as successor in interest of Amankumar Khanna, and all others similarly situated, filed a complaint against Inter-Con Security Systems, Inc., d/b/a Healthcare Security Services Group, and Enrique Hernandez, Neil Martau, Lance Mueller, Roland Hernandez, Paul Miller, Michael Marcharg, Jeanne Gervin, Michale Sutkaytis, Jana Fanning, Brittany Moore, Catherine Ross, Linda Saayad, Mark Chamberlin, and James Latham.  She alleged generally that her deceased husband,

Amankumar Khanna, was employed as a security guard by defendant Inter-Con Security Services (Inter-con), also doing business as Healthcare Security Services Group (HSSG), to provide security services to defendants' customers, including Kaiser Foundation Hospitals and the State of California.  ECF No. 1 ¶¶ 8-9.  Inter-con required Khanna and others in his position to work more than eight hours a day or forty hours a week without overtime compensation under the pretense that HSSG was a separate entity and so any hours attributed to HSSC were not overtime as to Inter-con.  *Id.* ¶¶ 11-12.  The complaint contained six causes of action: (1) violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq*., for failure to pay overtime wages; (2) violation of California Labor Code §§ 218.6, 510, 511, 558, 1194, 1198 and 1199 for failure to pay overtime wages; (3) violation of California Labor Code §§ 201, 202, 203, 204, 1194 and 1199 for failure to pay full wages when due; (4) violation of California Labor Code §§ 226, 226.3, 1174 and 1174.5 for failure to adhere to California law regarding accurate wage statements; (5) violation of California Business and Professions Code § 17200 (UCL), unfair business practices stemming from defendants' failure to pay legally required wages, to pay wages when due and to provide itemized statements of hours worked; and (6) a claim under California's Private Attorneys' General Act (PAGA), California Labor Code § 2699.3, based on the previously described Labor Code violations.  Plaintiff also sought certification of the case as an FLSA collective action and a class action for the state claims.

Defendants filed a motion to dismiss or to strike portions of the second, third, fourth, fifth and sixth causes of action and some of the claims for relief.  ECF No. 22. Specifically defendants asked the court to strike the class action allegations on the ground that plaintiff, as successor in interest to her husband's claim, was not an adequate class representative.  It also sought to strike the collective action allegations on the ground that plaintiff is not similarly situated to actual employees.  It asked the court to dismiss plaintiff's attempt to recover civil penalties under PAGA, and the claims for injunctive relief and for violation of California Business and Professions Code § 17200.  The court granted defendant's

1 motion to dismiss plaintiff's claim for injunctive relief, finding that she lacked standing and that

2 her PAGA claim, finding that a right to bring suit under those provisions was not assignable and

3 so did not survive Mr. Khanna's death.  The court otherwise denied the motion.  ECF No. 31.

4          On August 3, 2010, the court granted plaintiff's unopposed request to substitute

5 as plaintiff Priyanka Khanna, daughter of Amankumar and Shashi Khanna, in light of the death

6 of Shashi Khanna.  ECF No. 43.

7          On June 27, 2011, plaintiff filed a new motion seeking (1) appointment of class

8 counsel, (2) preliminary certification of the class and the collective action, and (3) preliminary

9 approval of a settlement.  ECF No. 52.

10          The court approved the appointment of class counsel and certified the class and

11 collective action.  It declined preliminary approval of the proposed settlement because the

12 materials submitted did not provide sufficient information about the potential range of recovery

13 or about the proposal to surrender claims relating to meals and rest breaks so as to allow the

14 court to determine whether the proposed settlement was fair.  The court also questioned why a

15 portion of the FLSA settlement would revert to Inter-Con.  In addition, it requested further

16 information about class counsel's fee request, the justification for the class representative's

17 incentive payment, and the selection of CPT as claims administrator.  Finally, the court found the

18 proposed notice confusing and inadequate in several respects.  *See* ECF 58.  Plaintiff has now

19 provided additional information about the proposed settlement as well as a redesigned notice to

20 class members.

21 II.  The Settlement

22          When the parties reach settlement before class certification, the court cannot

23 simply accept the parties' resolution but must also satisfy itself that the proposed settlement is

24 "fundamentally fair, adequate, and reasonable."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026

25 (9th Cir. 1998); *Staton v. Boeing*, 327 F.3d 938, 952 (9th Cir. 2003).  In making this

26 determination, the court should consider the strength of the plaintiffs' case; the likely duration

and complexity of further litigation; the risk of maintaining class status through trial, the amount offered in settlement, the stage of the proceedings; and counsel's views. *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012). Similar considerations guide the evaluation of the settlement of the FLSA collective action: the court must insure that "'the settlement is a fair and reasonable resolution of a bona fide dispute.'" *Lewis v. Vision Value, LLC.*, No. 1:11-cv-01055 LJO-BAM, 2012 WL 2930867, at *2 (E.D. Cal. July 18, 2012) (quoting *Yue Zhou v. Wang's Restaurant*, No. C 05-0279 PVT, 2007 WL 2298046 (N.D. Cal. Aug. 8, 2007)). Courts often apply the Rule 23 factors in evaluating the fairness of an FLSA settlement, while recognizing that some do not apply "because of the inherent differences between class actions and FLSA actions." *Almodova v. City and County of Honolulu*, Civil No. 07-00378 DAE-LEK, 2010 WL 1372298, at *4 (D. Haw. Mar. 31, 2010), *recommendation adopted by* 2010 WL 1644971 (D. Haw. Apr 20, 2010).

In very basic terms, the proposed settlement requires defendants to pay a maximum of $390,000, which will cover payments to class members, Khanna's class representative payment, counsel's fees and costs, employer payroll taxes on amounts characterized as wages, and the claims administrator's fees and costs.

A. The Potential Range of Recovery

In response to the court's concern that it could not evaluate the fairness of the proposed settlement without information about the potential range of recovery, counsel has now presented the declarations of Bridget Sanders, a forensic accountant, and of counsel Jeffrey Edwards, both of whom address the potential range of recovery should the case proceed to trial. ECF Nos. 59-3, 59-1. Edwards avers that Inter-Con provided electronic spreadsheets reflecting hours worked for both Inter-Con and HSSG between July 23, 2005 and March 8, 2009, along with average pay rates and total amounts paid to class members per pay period and that counsel verified the information by comparing it with original source evidence for specific lines of data

/////

4

1  for several class members provided and authenticated by Inter-Con.  Decl. of Jeffrey Edwards,

2  ECF No. 59-1 ¶¶ 10, 12.

3              Counsel provided this information to Sanders, who prepared a model displaying

4  each class member's hours at each worksite per day, the average pay rate on that day, and the

5  total paid to the class member for that day and, from this information, identified employees who

6  had worked excess hours without overtime compensation.  Decl. of Bridget Sanders, ECF No.

7  59-3 ¶ 9.  She then used multipliers to calculate liability for California and FLSA overtime, and

8  determined the liability for California overtime for August 11, 2005 through August 11, 2009 is

9  no more than $443,830.  She calculated  FLSA overtime from August 11, 2007 through August

10  11, 2009 to be  approximately $98,656.72, and $197,313.44 if multiplied by two for liquidated

11  damages; for the period of August 11, 2006 through March 9, 2009, the FLSA overtime amounts

12  are $207,234.02 and $414,690.04, respectively.  ECF No. 59-3 ¶¶ 13-14.  She also determined

13  the amount for unpaid second meal breaks from August 11, 2006 through March 8, 2009 to be

14  $16,231.77.  *Id.* ¶ 16.  Sanders calculated California overtime for March 1, 2008 through

15  March 1, 2009 as  $48,907.10, FLSA overtime for the same period to be $56,691.58 and unpaid

16  second meal breaks for this time to be $3,589.38.  ECF No. 59-3 ¶¶ 18-20.

17              Edwards represents that Inter-Con contends that if plaintiffs establish liability, the

18  maximum recoverable amount for overtime is $144,776 and if a portion of the claims are barred

19  by the release in *Adams v. Inter-Con Security Systems, Inc.*, 3:06-cv-05428 N.P. (N.D. Cal.), the

20  class would recover only $34,964.  ECF No. 59-1 ¶ 13.

21              Plaintiff contends that the settlement is reasonable in light of several factors.

22  First, Inter-Con disputes that HSSG was the same or a joint employer for purposes of overtime

23  calculations.  *See, e.g., Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 918 (9th Cir. 2003)

24  (recognizing that whether employment is considered joint employment under FLSA is dependent

25  on facts of a particular case); *Futrell v. Payday Cal., Inc.*, 190 Cal. App. 4th 1419, 1434 (2010)

26  /////

1   (stating that test to determine whether entity is an "employer" is fact-specific).   Should Inter-

2   Con prevail, of course, the class would recover nothing.

3                    Second, plaintiff recognizes that the statute of limitations for most FLSA claims is

4   two years, which extends to three if the violations are willful; a violation is willful if the

5   employer knew of or recklessly disregarded the risk that its conduct violated the FLSA.

6   *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988).   If the two year statute of

7   limitations applied, the FLSA overtime would amount to approximately $98,000.   It is possible

8   that plaintiff would not be able to show that any FLSA violations were willful, which would

9   reduce the award.

10                    In addition, although "[a]n employer who violates the overtime law is liable not

11   only for the unpaid overtime compensation but also 'an additional equal amount as liquidated

12   damages,'" a court may deny the liquidated damage award if it determines the employer acted in

13   good faith, with objectively reasonable grounds for its belief that it had not violated the FLSA.

14   *Chao v. A-One Med. Servs.*, 346 F.3d at 920 (quoting 29 U.S.C. § 216(b)).   Although "[d]ouble

15   damages are the norm," plaintiff recognizes that the court has the discretion to deny the

16   liquidated damages award, which would further reduce the recovery.

17                    Third, plaintiff notes that under *Pineda v. Bank of America*, 50 Cal. 4th 1389,

18   1393 (2010), waiting time penalties under California Labor Code § 203 are not appropriately

19   sought under the UCL, because they are not wages and thus are not restitutionary, a factor that

20   might further reduce recover.

21                    Fourth, the court already has recognized the uncertainty regarding claims before

22   March 1, 2008, stemming from the release in *Adams*; if *Adams* barred earlier claims, then the

23   total class recovery would be drastically reduced.   *See* ECF No. 58 at 17.

24                    Plaintiff's figures suggest the maximum class recovery for both the California and

25   FLSA overtime claims is approximately $858,520; given the real uncertainties outlined above,

26   the approximately $260,000 that will be distributed to the class is not unreasonable.   *See Glass v.*

1   *UBS Fin. Serv., Inc.*, No. C-06-4068, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), *aff'd*

2   331 F. App'x 452 (9th Cir. 2009) (citing the uncertainty of litigation in finding a settlement in

3   the range of 25 to 35% of claimed damages appropriate).

4      In the earlier order, the court questioned whether the release of any potential meal

5   and rest break claims rendered the settlement unfair.  Plaintiff has provided calculations of

6   recoveries for an improperly withheld second lunch break and has discussed the impact of

7   *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012) on any UCL claim

8   stemming from the failure to offer a second lunch break.  As the potential recovery is small and

9   the recovery uncertain in light of *Brinker*, including these claims in the release does not render

10  the release unfair or unreasonable.

11     B.  The Different Treatment of the FLSA Portion

12     In its earlier order, the court questioned why the FLSA portion of the settlement

13  contained a provision allowing a portion of the FLSA settlement money to revert to Inter-Con,

14  depending on the number of those who opt-in to the FLSA collective action.  ECF No. 58 at 17;

15  *see* ECF No. 52-1 at 13 ¶ 5B (specifying that one-third of the net settlement amount shall be

16  allocated to the FLSA claims but shall revert to Inter-Con if not claimed by class members

17  returning opt-in forms).

18     Plaintiff has responded that a settlement with a reverter clause is not *per se*

19  prohibited and argues that such a clause may be "a useful tool" in negotiating a settlement when

20  the number of potential claimants is unknown.  ECF No. 59 at 11.[1]  She argues the negotiated

21  FLSA portion of the settlement covers theoretical one-hundred percent participation, to be

22  adjusted based on the number who actually opt-in.  ECF No. 59 at 12.

23  /////

24

25    [1]  Plaintiff suggests that the term "'reversionary' may be the wrong word."  ECF No. 59
    at 10.  It is the word the parties used, however, in the parties' Memorandum of Agreement.  ECF

26  No. 52-1 at 14.

1       The court agrees that a reverter clause does not necessarily mean that the

2   settlement is unfair to the FLSA class, but notes that courts have on occasion questioned the

3   fairness of reversion of funds in Rule 23 or FLSA actions.  *See Minor v. FedEx Office and Print*

4   *Servs., Inc*., No. C09–1375 THE, 2013 WL 503268, at *4 (N.D. Cal. Feb. 8, 2013); *Harris v.*

5   *Vector Marketing Corp*., No. C–08–5198 EMC, 2011 WL 4831157, at *5 (N.D. Cal. Oct. 12,

6   2011).  Plaintiff has suggested that the parties drafted the reversionary provisions as part of the

7   arms-length negotiation.  At this point in the litigation, the court will accept this representation

8   but will expect a more thorough explanation at the time of the fairness hearing.  By that time, the

9   court will have a clearer picture of the number of FLSA opt-in claims made and thus will be able

10  to determine whether the amount Inter-Con actually will pay for the FLSA violations is fair.  *See*

11  *Minor v. FedEx Office*, 2013 WL 503268, at *4.

12      C.  Attorneys' Fees

13      In its original order, the court noted that the potential one third of the settlement

14  fund allocated for attorneys' fees and costs did not "necessarily render[] the settlement unfair."

15  ECF No. 58 at 20.  Nevertheless counsel has provided additional information about the number

16  of hours the firm has expended in bringing this case, suggesting that even a maximum award of

17  fees would compensate the firm at less than $125 an hour, which is less than Sacramento lodestar

18  rates for associate attorneys.  ECF No. 59-1 ¶¶ 3-4.  Counsel also has noted that the firm has paid

19  $37,000 in costs, with at least an additional $7,000 expected to be paid for administration of the

20  settlement.  These additional figures support the court's original determination that the potential

21  fee payment does not render the settlement unfair.

22      D.  Class Representative Award

23      The court expressed some unease with the proposed $10,000 incentive payment

24  for the class plaintiff, particularly as it was supported only by counsel's fairly conclusory

25  description of plaintiff's involvement in the case.  In this renewed filing, plaintiff observes that

26  courts have approved similar payments.  The court does not dispute this proposition, but must

1  determine whether such a payment in this case undercuts the fairness of the settlement.  In light

2  of the other information about the range of recovery now provided, the court declines to find the

3  proposed incentive payment renders the settlement unfair.  However, as the court has discretion

4  whether to approve the request, it expects any request for such a payment made at the fairness

5  hearing to be supported by something other than counsel's conclusory declaration.  *See West v.*

6  *Circle K Stores*, No. CIV S-04-0438 WBS GGH, 2006 WL 1652598, at *12 (E.D. Cal. June 13,

7  2006).

8  II.  CPT As Administrator

9          Plaintiff has provided the declaration of Julie Green, the Director of Operations

10  for CPT Group, which describes CPT's experience in claims administration, its plan for

11  administering the claims process in this case, and its quoted fee of $7,000 for its services.  Decl.

12  of Julie Green, ECF No. 59-2 ¶¶ 5,7 & Exs. A & B.  This information satisfies the court's

13  concerns.  CPT Group is appointed as Claims Administrator.

14  III.  The Notice

15          The court had expressed concerns that the proposed notice submitted initially was

16  not "the best notice that is practicable under the circumstances" because of some potentially

17  confusing sections.  FED. R. CIV.P. 23(c)(2)(B).  Specifically, the notice provided potentially

18  confusing directions about the necessity to opt-in for the FLSA portion of the settlement, failed

19  to notify the class that Inter-Con might withdraw from the settlement if there was insufficient

20  participation by class members, and permitted claimants to send forms by equivalents to first

21  class mail without explaining what those equivalents were.  ECF No. 58 at 20-21.  The new

22  proposed notice has been redesigned to read more clearly, and has corrected the problems the

23  court identified in the earlier notice.

24          The court also questioned why claimants were given one date to file objections to

25  the settlement and a second, later date to object to the claim for attorneys' fees.  Relying on *In re*

26  *Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010) (*Mercury*),

1    plaintiff argues that separate dates for the objections are necessary.  In *Mercury*, the Ninth

2    Circuit held that "a schedule that requires objections to be filed before the fee motion itself is

3    filed denies the class the full and fair opportunity to examine and oppose the motion that Rule

4    23(h) contemplates."  *Id.* at 995.  The court added that it did not "adopt a bright-line rule of a

5    time period that would meet Rule 23(h)'s requirement that the class have an adequate

6    opportunity to oppose class counsel's fee motion."  *Id.*  *Mercury* did not set a fixed schedule or

7    manner in which objections must be handled but rather said only that class members must have

8    sufficient time to object to the final fee application, not just the notice that a portion of the

9    settlement funds might be used to compensate counsel.

10             In this case, counsel's proposed schedule requires the class members to file

11   objections to the settlement fairly early in the proceedings, followed by the preparation of the

12   motion for final approval, which will include data on any objections to the non-fee settlement.

13   ECF No. 17.  In a case with a larger potential class, counsel's summary of objections to the

14   settlement would be useful.  In this case, however, the class is estimated to consist of only sixty-

15   one people; the court is equipped to evaluate any objections, which will be filed on the docket.

16   The court will therefore set a single date for objections to the settlement and to the completed

17   motion for fees.

18             IT IS THEREFORE ORDERED that:

19             1.  CPT Group is appointed as Claims Administrator to carry out the duties of the

20   administrator as set forth in the stipulation of settlement, ECF No. 52-1 at 32-33;

21             2.  The stipulation of settlement is preliminarily approved as fair and reasonable

22   under Rule 23 and the FLSA, subject to final consideration at the fairness hearing;

23             3.  The Proposed Class Notice is approved, ECF No. 59-1 at 6-13; and

24   /////

25   /////

26   /////

1          4.  The court directs the parties to submit, within seven days of the date of this

2   order, a new proposed schedule, setting the same day for objections to settlement and fees, after

3   the completed fee motion has been filed.

4   DATED:  March 21, 2013.

5

6   _____

    UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26