1
2
3
4
5
6
7
8
UNITED STATES DISTRICT COURT
9
EASTERN DISTRICT OF CALIFORNIA
10
11 PRIYANKA KHANNA, et al.,                    No.  2:09-CV-2214 KJM EFB
12          Plaintiffs,                        ORDER
13       v.
14 INTERCON SECURITY SYSTEMS,
   INC., et al.,
15
                Defendant.
16
17
18          This case was on calendar on December 6, 2013, for a hearing on the final
19 approval of the class settlement in this case.  Jeffrey Edwards, Mastagni, Holstedt, Amick, Miller
20 & Johnsen appeared for plaintiff; Jeffrey Grube, Law Offices of Jeff Grube, appeared for
21 defendants.
22 I.  PROCEDURAL BACKGROUND
23          On August 11, 2009, plaintiff Shashi Khanna, suing individually and as successor
24 in interest of Amankumar Khanna, and on behalf of all others similarly situated, filed a complaint
25 against Inter-Con Security Systems, Inc., d/b/a Healthcare Security Services Group, and Enrique
26 Hernandez, Neil Martau, Lance Mueller, Roland Hernandez, Paul Miller, Michael Marcharg,
27 Jeanne Gervin, Michale Sutkaytis, Jana Fanning, Brittany Moore, Catherine Ross, Linda Saayad,
28 Mark Chamberlin, and James Latham.  She alleged generally that her deceased husband

1

Amankumar Khanna had been employed as a security guard by defendant Inter-Con Security Services (Inter-Con), also doing business as Healthcare Security Services Group (HSSG), to provide security services to defendants' customers, including Kaiser Foundation Hospitals and the State of California.  ECF No. 1 ¶¶ 8-9.  She alleged that Inter-Con required Khanna and others in his position to work more than eight hours a day or forty hours a week without overtime compensation under the pretense that HSSG was a separate entity and so any hours attributed to HSSC were not overtime as to Inter-con.  *Id*. ¶¶ 11-12.  The complaint contained six causes of action: (1) violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq*., for failure to pay overtime wages; (2) violation of California Labor Code §§ 218.6, 510, 511, 558, 1194, 1198 and 1199 for failure to pay overtime wages; (3) violation of California Labor Code §§ 201, 202, 203, 204, 1194 and 1199 for failure to pay full wages when due; (4) violation of California Labor Code §§ 226, 226.3, 1174 and 1174.5 for failure to adhere to California law regarding accurate wage statements; (5) violation of California Business and Professions Code § 17200 (UCL), unfair business practices stemming from defendants' failure to pay legally required wages, to pay wages when due and to provide itemized statements of hours worked; and (6) a claim under California's Private Attorneys General Act (PAGA), California Labor Code § 2699.3, based on the previously described Labor Code violations.  Plaintiff also sought certification of the case as an FLSA collective action and a class action for the state claims.

Defendants filed a motion to dismiss or to strike portions of the second, third, fourth, fifth and sixth causes of action and some of the claims for relief.  ECF No. 22. Specifically, defendants asked the court to strike the class action allegations on the ground that plaintiff, as successor in interest to her husband's claim, was not an adequate class representative. They also sought to strike the collective action allegations on the ground that plaintiff was not similarly situated to actual employees.  They asked the court to dismiss plaintiff's attempt to recover civil penalties under PAGA, and the claims for injunctive relief and for violation of California Business and Professions Code § 17200.  The court granted the motion to dismiss plaintiff's claim for injunctive relief, finding that she lacked standing, and her PAGA claim,

/////

2

1  finding that a right to bring suit under those provisions was not assignable and so did not survive

2  Mr. Khanna's death.  The court otherwise denied the motion.  ECF No. 31.

3          On August 3, 2010, the court granted plaintiff's unopposed request to substitute as

4  plaintiff Priyanka Khanna, daughter of Amankumar and Shashi Khanna, in light of the death of

5  Shashi Khanna.  ECF No. 43.

6          On June 27, 2011, plaintiff filed a motion seeking (1) appointment of class

7  counsel, (2) preliminary certification of the class and the collective action, and (3) preliminary

8  approval of a settlement.  ECF No. 52.

9          The court approved the appointment of class counsel and certified the class and

10  collective action.  It declined preliminary approval of the proposed settlement because the

11  materials submitted did not provide sufficient information about the potential range of recovery or

12  about the proposal to surrender claims relating to meals and rest breaks so as to allow the court to

13  determine whether the proposed settlement was fair.  The court also questioned why a portion of

14  the FLSA settlement would revert to Inter-Con.  In addition, it requested further information

15  about class counsel's fee request, the justification for the class representative's incentive

16  payment, and the selection of CPT as claims administrator.  Finally, the court found the proposed

17  notice confusing and inadequate in several respects.  *See* ECF 58.

18          Thereafter plaintiff provided additional information about the range of expected

19  recovery should the case proceed to trial and about the proposed class administrator and

20  submitted a redesigned notice to class members.  ECF No. 59.

21          On March 22, 2013, the court gave preliminary approval to the settlement and to a

22  revised notice.  ECF No. 64.  That notice provided information about the proposed settlement and

23  explained that class members would be required to submit a claim form in order to participate in

24  the settlement.  ECF No. 59-1 at 6-13.

25  II.  THE SETTLEMENT

26          The proposed settlement contains the following provisions: defendants will

27  provide a maximum amount of $390,000 "inclusive of all settlement payments to Settlement

28  Class Members; Plaintiff's class representative payment; Class Counsel's attorney's fees and

expenses; payroll taxes; and the Settlement Administrator's fees and expenses." ECF No. 52-1 at 13 ¶ 3 & 29 ¶ 32. Of the net settlement amount, that is, the amount of the fund to be paid to class members, two-thirds shall be applied to the state law claims and is non-reversionary. *Id.* at 13 ¶¶ 4, 5a. One-third of the net settlement amount shall be allocated to the FLSA claims but shall revert to Inter-Con if not claimed by class members' returning opt-in forms. *Id.* ¶ 5B. Fifty percent of the payments will be treated as wages, subject to deductions for payroll taxes and withholding. *Id.* at 14 ¶ 6. Inter-Con will not oppose class counsel's application for fees and costs not to exceed $130,000, or one-third of the maximum settlement payment, or a request for a class representative payment of $10,000 in addition to plaintiff's share of the class settlement. *Id.* at 31 ¶¶ 44-45.

The settlement contemplates that by submitting a timely claim form for an allocated share, a class member will thereby opt-in to the FLSA collective action and will be so notified. *Id.* at 34 ¶ 54. The notice packet will also include an exclusion form to allow any potential class member to opt-out of the class for the state law claims. *Id.* at 36 ¶ 58. Class members who do not submit exclusion forms will be bound by the settlement and release of state law claims, but not the FLSA claims. *Id.* at 36 ¶ 59. Class members who submit a claim form will be bound by the settlement and release of the FLSA claims as well. *Id.* If class members submit both exclusion and claim forms, the exclusion form will be disregarded. *Id.* at 37 ¶ 60.

Class members who submit valid exclusion forms will not be permitted to file objections to the settlement, but those who return claim forms may also submit objections to the settlement itself as well as the application for attorney's fees and will be given the opportunity to appear at the fairness hearing if they give notice of their intent to appear. *Id.* at 35 ¶ 57, 37 ¶ 61. Class members who dispute the Administrator's approximation of their share of the settlement amount, which will be included on the claim form and which the Administrator will calculate based on information supplied by Inter-Con, must submit a written, signed challenge along with any supporting documentation to the Claims Administrator, who will resolve the challenge without a hearing. *Id.* at 38 ¶¶ 65-67 & 34 ¶ 50.

/////

The releases provide that class members release and discharge Inter-Con, along with successors, assigns, and its current and former employees and directors as well as the individual defendants

> from any and all claims, known or unknown, that were brought or could have been brought in the operative complaint in the Action, including but not limited to, statutory, constitutional, contractual or common law claims for wages, damages, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, for the following categories of allegations: (a) allegations for unpaid wages; unpaid overtime compensation; unpaid hourly premiums; failure to pay overtime compensation based on the regular rate of pay or otherwise; and any and all claims for the failure to provide meal and/or rest periods; and (b) any and all claims for recordkeeping or pay stub violations or waiting time penalties or any other statutory penalties ("Released Claims"), arising from the period from August 11, 2005, through the date of final Court approval of the Settlement ("Released Period").  Released claims include claims meeting the above definition under any and all applicable statutes (other than the FLSA), including without limitation the California Labor Code (including, but not limited to, sections 201, 202, 203, 204, 210, 218.6, 226, 226.3, 227.3, 510, 511, 558, 1174, 1174.5, 1194, 1198, 1199 and 2698, et seq.); the wage orders of the California Industrial Welfare Commission; California Business and Professions Code section 17200, et seq.; and the California common law of contract.

ECF No. 52-1 at 39 ¶ 68.  In addition, the claimants "fully release and discharge Released Persons from any and all claims, debts, liabilities, demands, obligations, penalties, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action of whatever kind or nature under the FLSA, whether known or unknown, that were alleged or that reasonably could have arisen out of Plaintiffs' allegations in the Action up to and including the date the Court grants final approval of the material terms of the Settlement."  *Id*. at 39-40 ¶ 78.  Finally, class members who do not submit valid exclusion forms "acknowledge that the Settlement is intended to include in its effect all claims that were or could have been asserted in the Action, including any claims that each Class Member does not know or suspect to exist in his or her favor against Released Persons.  Consequently, with regard to claims that were brought or reasonably could have arisen out of the facts Plaintiffs allege in the Action, the Class Members also waive all rights and benefits afforded by section 1542 of the California Civil Code, and do so understanding the significance of that waiver."  *Id*. at 40 ¶ 70.  In return, Qualified Claimants (defined as class

members who timely submit a valid claim form), will receive their "allocated share" (defined as the pro rata portion of the Final Settlement Payment).  *Id*. at 30 ¶ 36.

The agreement provides that "if 10% or more of the Class Members or a number of Class Members whose share of the Class Settlement Proceeds represents 10% or more of the available Net Settlement Amount, validly elect not to participate in the Settlement, or if fewer than 50% of the Settlement Class Members submit Claim Forms and validly opt into the Fair Labor Standards Act settlement, or the number of Class Members who do not submit Claim Forms represents 40% or more of the total share of the Net Settlement Amount, Inter-Con will have the sole and exclusive right to rescind the Settlement, and the Settlement and all actions taken in furtherance will be null and void.  Inter-Con must exercise this right within 14 calendar days after the Settlement Administrator notifies the parties of the valid elections not to participate and the participation rate on submission of claims forms . . . ."  *Id*. at 43 ¶ 76.  Inter-Con has not elected to rescind the agreement.

If the court finally approves the settlement, the Administrator will mail settlement checks to those who filed claim forms.  The checks will remain negotiable for ninety days after mailing; thereafter the Administrator will void the checks and return the value of uncashed checks to Inter-Con.  A class member's failure to cash the check will be deemed an irrevocable waiver of any right to the Allocated Share but will not relieve the claimant of the binding effect of the settlement agreement.  ECF No. 52-1 at 37 ¶ 63.

III.  NOTICE TO, RESPONSE FROM, AND PAYMENT TO CLASS MEMBERS

In connection with the instant motion, plaintiff has filed the declaration of Alejandra Zarate, an employee of CPT Group, Inc., the claims administrator.  Decl. of Alejandra Zarate, ECF No. 67-2.  CPT Group prepared a packet for each of the sixty class members, consisting of the class notice, an opt-out form and a claim/opt-in form, which listed the total compensable work weeks and the estimated settlement amount for each class member.  *Id*. ¶¶ 5-6. Thereafter it ran a National Change of Address search in order to update addresses for the class list and on May 20, 2013, mailed the packets to the class members.  *Id*. ¶¶ 7-8.  CPT Group followed up with a reminder card to class members before the expiration of the time to submit

1  claims.  *Id.* ¶ 10.  One packet was returned by the post office as undeliverable.  *Id.* ¶ 11.

2  Eighteen class members returned claim forms, but one is deficient because the

3  class member failed to provide a complete Social Security number.  *Id.* ¶¶ 12, 15.  No one who

4  returned a claim disputed the amount and no one has asked for exclusion.  *Id.* ¶¶ 13, 15.

5  Based on compensable workweeks, the largest state law claim is $12,880.72, the

6  smallest is $247.41, and the average is $4899.09.  Second Decl. of Alexandra Zarate, ECF No.

7  74-1 ¶¶ 3-4.  From the eighteen claims, $88,183.47 of the $162,000.03 earmarked to compensate

8  for state overtime has been claimed, leaving $73,816.53 for proportional distribution to the class

9  members who returned claim forms.  *Id.*, Ex. A.  When this distribution is made, the largest and

10  smallest claims based on compensable workweeks are $23,662.92 and $455.06, respectively, with

11  the average payout being $9,000.  *Id.* ¶¶ 5-6.

12  The settlement agreement sets aside $81,000 for the FLSA claims.  Based on the

13  eighteen claims returned, $53,638.27 will be paid to claimants for their FLSA claims, while

14  $27,361.73 will be returned to defendants.  *Id.* ¶ 7 & Ex. A.

15  IV.  THE SETTLEMENT AND FAIRNESS

16  A.  Legal Framework

17  Under the FLSA, an employer must pay a non-exempt employee at a rate not less

18  than time and a half his or her regular rate of pay if the employee works more than forty hours in

19  one week.  29 U.S.C. § 207(a)(1); *Troy v. Kehe Food Distribs., Inc.*, 276 F.R.D. 642, 647 (W.D.

20  Wash. 2011).  An employee may pursue an FLSA action to recover unpaid overtime wages and

21  may bring the action "for and in behalf of himself or themselves and other employees similarly

22  situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in

23  writing to become such a party . . . ."  29 U.S.C. § 216(b); *Knepper v. Rite Aid Corp.*, 675 F.3d

24  249, 257 (3d Cir. 2012).  Accordingly, an employee must "opt-in" to the FLSA action to be

25  bound by its resolution.

26  Similarly in California, an employer must pay an employee at the rate of one and a

27  half times the usual rate of pay for work over eight hours in any day or forty hours in any week; a

28  failure to pay overtime may also give rise to a number of other violations of California labor law

relating to payment of complete wages upon termination and the provision of proper wage

statements as well as a violation of California's prohibition of unfair business practices.  Cal. Lab.

Code §§ 201, 202, 226(a), 510; Cal. Bus. & Prof. Code § 17200; *Sullivan v. Oracle Corp.,* 51 Cal.

4th 1191, 1205 (2011).  When a state wage and hour case is pursued as a class action under Rule

23(b)(3), a potential class member must be given the opportunity to "opt-out" of the action.  *See*

Fed. R. Civ. P. 23(c); *Ervin v. OS Restaurant Services, Inc.,* 632 F.3d 971, 976 (7th Cir. 2011).

Because of these differences, courts have held that employees cannot use opt-out class actions to

enforce the FLSA, but rather must bring a collective action.  *Knepper*, 675 F.3d at 257.  Despite

the differences in the two types of actions and the potential for confusion, courts have held that

employees may pursue a "hybrid" or combined opt-in FLSA action and opt-in class action to

enforce state wage and hour laws.  *Busk v. Integrity Staffing Solutions*, 713 F.3d 525, 530 (9th

Cir. 2013), *pet. for writ of cert. granted*, __ U.S. __, 2014 WL 801096 (Mar. 3, 2014); *Murillo v.*

*Pac. Gas & Elec. Co*., 266 F.R.D. 468, 472 (E.D. Cal. 2010).

When the parties reach settlement of a class action, the court cannot simply accept

the parties' resolution but must also satisfy itself that the proposed settlement is "fundamentally

fair, adequate, and reasonable."  *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998).

After the initial certification and notice to the class, the court conducts a fairness hearing before

finally approving any proposed settlement.  *Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261,

1266-67 (9th Cir. 2010); Fed. R. Civ. P. 23(e)(2) ("If the proposal would bind class members, the

court may approve it only after a hearing and on finding that it is fair, reasonable, and

adequate.").  The court must balance a number of factors in determining whether the proposed

settlement is fair, adequate and reasonable:

> the strength of the plaintiffs' case; the risk, expense, complexity,
> and likely duration of further litigation; the risk of maintaining class
> action status throughout the trial; the amount offered in settlement;
> the extent of discovery completed and the stage of the proceedings;
> the experience and views of counsel; the presence of a
> governmental participant; and the reaction of the class members to
> the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *Adoma v. Univ. of Phoenix*, 913 F. Supp. 2d 964, 975 (E.D. Cal.

2012); *see also In re Microsoft I-V Cases*, 135 Cal. App. 4th 706, 723 (2006) (under California

1   law, a court must ensure the fairness of any class settlement by considering similar list of factors);

2   *Wershba v. Apple Computers, Inc.*, 91 Cal. App. 4th 224, 245 (2001) (stating a settlement is

3   presumed to be fair when it was reached through arm's-length bargaining, investigation and

4   discovery are sufficient to inform counsel's and the court's views, counsel is experienced in

5   similar litigation, and the percentage of objectors is small).  The list is not exhaustive and the

6   factors may be applied differently in different circumstances.  *Officers for Justice v. Civil Serv.*

7   *Comm.*, 688 F. 2d 615, 625 (9th Cir. 1982).

8          The court must consider the settlement as a whole, rather than its component parts,

9   in evaluating fairness and it "must stand or fall in its entirety."  *Hanlon*, 150 F.3d at 1026.

10  Ultimately, the court must reach "a reasoned judgment that the agreement is not the product of

11  fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement,

12  taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice*, 688 F.2d

13  at 625.

14         Before approving a settlement of an FLSA collective action, the court must

15  undertake a similar inquiry.  *Lewis v. Vision Value, LLC*, No. 1:11-cv-01055 LJO-BAM, 2012

16  WL 2930867, at *2 (E.D. Cal. July 18, 2012).  After members have opted in to the collective

17  action,  the court must determine whether a collective action is warranted and whether the

18  ultimate settlement is fair.  *Knipsel v. Chrysler Group*, LLC, No. 11-11886, 2012 WL 553722, at

19  *1 (E.D. Mich. Feb. 21, 2012); *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL

20  2025106, at *7 (E.D.N.Y. Jan. 20, 2010).  As there is no set of factors for evaluating an FLSA

21  collective action settlement, some courts adopt the factors for approving a class action settlement

22  even though some will not apply "because of the inherent differences between class actions and

23  FLSA actions . . . ."  *Almodova v. City & Cnty. of Honolulu*, Civil No. 07-00378 DAE-LEK, 2010

24  WL 1372298, at *4 (D. Haw. Mar. 31, 2010), *recommendation adopted by* 2010 WL 1644971 (D.

25  Haw. Apr. 20, 2010); *see also Clesceri v. Beach City Investigations & Protective Servs., Inc.*, No.

26  CV-10-3873-JST (Rzx), 2011 WL 320998, at *4 (C.D. Cal. Jan. 27, 2011) (finding FLSA

27  requirement satisfied when Rule 23 standard is met).

28  /////

1          B.  Strength of Plaintiff's Case

2                  Although the strength of the case is an important consideration, "the settlement or

3    fairness hearing is not to be turned into a rehearsal for trial on the merits," and the court is not "to

4    reach any ultimate conclusions on the merits of the dispute. . . ." *Officers for Justice*, 688 F.2d at

5    626.  Here, plaintiffs' case is potentially undercut by the settlement in *Adams v. Inter-Con*

6    *Security Systems, Inc*., No. 06-5428 MHP (N.D. Cal. 2007), a dispute about overtime wages for

7    training and its accompanying release, which might foreclose any claims in this case arising

8    before March 1, 2008.  The claims in this action likely extended only an additional year, to March

9    2009.  In addition, the statute of limitations for FLSA claims is two years, which extends to three

10   years only if the violations are willful; a violation is willful if the employer knew of or recklessly

11   disregarded the risk that its conduct violated the FLSA.  *McLaughlin v. Richland Shoe Co*., 486

12   U.S. 128, 133 (1988).  If the two year statute of limitations applies, the FLSA overtime would

13   amount to approximately $98,000.  The potential problems in showing willfulness further

14   undercut the strength of plaintiffs' case.  This factor favors the settlement.

15          C.  Risk, Expense, Complexity and Likely Duration of Further Litigation; Risk of
              Maintaining Class Status
16

17                  "Approval of settlement is 'preferable to lengthy and expensive litigation with

18   uncertain results.'"  *Morales v. Stevco, Inc*., No. 1:09-cv-00704 AWI JLT, 2011 WL 5511767, at

19   *10 (E.D. Cal. Nov. 10, 2011) (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV,*

20   *Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (*DIRECTV*).  In the memorandum supporting the

21   request for approval in this case, plaintiffs aver that defendants dispute liability for any overtime

22   pay and would challenge not only class certification but also Priyanka Khanna's status as class

23   representative, as they did in the motion to dismiss.  ECF No. 22 at 11-16.  Given the small size

24   of the class, a motion to decertify might unravel the class.  Although the issues in this case are not

25   unduly complex, the risks inherent in continued litigation support the settlement.

26   /////

27   /////

28

                                                    10

1

2          D. Amount Offered in Settlement

3              In this case, class counsel obtained information from Inter-Con and HSSG

4   showing hours worked, average pay, and total amounts paid to class members per pay period and

5   provided it to forensic accountant Bridget Sanders.  Decl. of Jeffrey Edwards, ECF No. 59-1

6   ¶¶ 10, 12.  Sanders determined the liability for California overtime for August 11, 2005 through

7   August 11, 2009 is no more than $443,830.  She calculated  FLSA overtime from August 11,

8   2007 through August 11, 2009 to be  approximately $98,656.72, and $197,313.44 if multiplied by

9   two for liquidated damages; for the period of August 11, 2006 through March 9, 2009, the FLSA

10  overtime amounts are $207,234.02 and $414,690.04, respectively.  ECF No. 59-3 ¶¶ 13-14.  She

11  also determined the amount for unpaid second meal breaks from August 11, 2006 through March

12  8, 2009 to be $16,231.77.  Id. ¶ 16.  Sanders calculated California overtime for March 1, 2008

13  through March 1, 2009 as $48,907.10, FLSA overtime for the same period to be $56,691.58 and

14  unpaid second meal breaks for this time to be $3,589.38.  ECF No. 59-3 ¶¶ 18-20.

15             According to Edwards, Inter-Con contends that if plaintiffs establish liability, the

16  maximum recoverable amount for overtime is $144,776 and if a portion of the claims are barred

17  by the *Adams* release, the class would recover only $34,964.  ECF No. 59-1 ¶ 13.

18             "'[A] cash settlement amounting to only a fraction of the potential recovery will

19  not per se render the settlement inadequate or unfair.'"  *Greko v. Diesel U.S.A., Inc.,*

20  No. 10-cv-2576, 2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) (quoting *Officers for Justice*, 688

21  F.2d at 623); *Glass v. UBS Fin. Serv., Inc.*, No. C-06-4068, 2007 WL 221862, at *4 (N.D. Cal.

22  Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009) (citing the uncertainty of litigation in

23  finding a settlement in the range of 25 to 35 percent of claimed damages appropriate).

24             In this case, the parties reached the settlement amount as part of a mediation.  The

25  proposed settlement of the state law overtime claims is approximately 36 percent of what

26  plaintiffs' accountant estimated as the maximum recovery and the proposed settlement of the

27  FLSA claims is approximately 39 percent of the amount Sanders estimated plaintiffs could

28  recover for the period from August 11, 2006 through March 9, 2009, not enhanced for liquidated

1   damages, and 19 percent of the FLSA recovery including liquidated damages.  *Collins v. Cargill*

2   *Meat Solutions Corp*,  274 F.R.D. 294, 302 (E.D. Cal. 2011) (a court must "'consider the

3   plaintiffs' expected recovery balanced against the value of the settlement offer'") (quoting *In re*

4   *Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)).  This favors settlement.

5   *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 444 (E.D. Cal. 2013) (finding a recovery

6   of approximately 30 percent of estimated damages to favor settlement).

7          E.  Extent of Discovery and Stage of the Proceedings

8          "In the context of class action settlement, 'formal discovery is not a necessary

9   ticket to the bargaining table' where the parties have sufficient information to make an informed

10  decision about settlement."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir.

11  1998) (quoting *In re Chicken Antitrust Litig*., 669 F.2d 228, 241 (5th Cir. 1982)) (citation and

12  internal quotation omitted).

13         Plaintiffs' counsel has not addressed the extent of discovery undertaken in this

14  case, though the billing records submitted in connection with the accompanying motion for

15  attorneys' fees, show that the parties conducted some discovery before they attended mediation.

16  *See* ECF No. 68-1 at 50, 54, 59.

17         As part of the discovery process, Inter-Con produced electronic spreadsheets

18  reflecting hours worked for both Inter-Con and HSSG between July 23, 2005 and March 8, 2009,

19  along with average pay rates and total amounts paid to class members per pay period and also

20  provided original source evidence for specific lines of data for six randomly selected class

21  members, which confirmed these class members' start times, end times, average pay rates and

22  total amounts paid per pay period.  ECF 59-1 ¶¶ 10-12.  Counsel provided this information to a

23  forensic accountant, who calculated overtime figures for the state law and FLSA claims.  ECF

24  No. 59-3 ¶¶ 11, 13.  By the time of the mediation, then, it appears counsel had information upon

25  which to base settlement discussions.  Plaintiffs' counsel David Mastagni avers before agreeing to

26  the settlement, he undertook research into the viability of the claims, pursued discovery, and

27  considered whether a release of "all claims, known and unknown, that were brought or could have

28  /////

12

1   been brought" in the *Adams* case could foreclose the current claims.  Decl. of David Mastagni,

2   ECF No. 52-1 at 5-6 ¶¶ 18-19.

3       F.  Experience and Views of Counsel

4           Counsel Mastagni has provided information on his personal and his firm's

5   experience in labor law cases and class actions.  Second Decl. of David Mastagni, ECF No. 68-2

6   ¶¶ 9-10.  Attorney Jeffrey Edwards, an associate with the Mastagni firm, has submitted a

7   declaration describing his experience and that of the other associates who worked on the cases.

8   Decl. of Jeffrey Edwards, ECF No. 68-1 ¶¶ 1, 4-10.  These declarations show the firm to have

9   pursued many employment claims, including several class and collective actions.  Not

10  surprisingly, counsel "believes this Settlement to be an excellent result for the Class."  ECF No.

11  67 at 20.  Given the experience of counsel, this favors the settlement.  *Barbosa v. Cargill Meat*

12  *Solutions Corp.*, __ F.R.D. __, 2013 WL 3340939, at *14 (E.D. Cal. Jul. 2,  2013).

13      G.  Reaction of the Class

14          No class member has opted out and none has filed objections to the proposed

15  settlement, which favors the settlement.  *DIRECTV*, 221 F.R.D. at 529 (stating "the absence of a

16  large number of objections to a proposed class action settlement raises a strong presumption the

17  terms of a proposed class settlement action are favorable to the class members").  Nevertheless,

18  only eighteen class members, or thirty percent, have returned claim forms.  Although a low

19  response rate does not necessarily mean the settlement is unfair, this factor is neutral in light of

20  the class members' waiver of any meal and rest break claims as well as their waiver of individual

21  pursuit of the state law overtime claims.  *See Touhey v. United States*, No. EDCV 08-01418-VAP

22  (RCx), 2011 WL 3179036, at *7-8 (C.D. Cal. Jul. 25, 2011) (finding a 2 percent response rate did

23  not render settlement unfair); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01942, 2011 WL

24  6209188, at *14 (E.D. Mich. Dec. 13, 2011) (finding settlement fair even when only 1 percent

25  responded to notices when that 1 percent represented 46 percent of defendant's total sales).

26      H.  Possibility of Collusion

27          Before approving the settlement, the court must consider whether it is the product

28  of collusion.  *Hanlon*, 150 F.3d at 1026; *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443,

1    454 (E.D. Cal. 2013). That the settlement was reached during an outside mediation supports the

2    conclusion that the settlement was not collusive. *Lusby v. Gamestop Inc.*, __ F.R.D. __, 2013 WL

3    1210283, at *10 (N.D. Cal. Mar. 25, 2013).

4        I.  Other Considerations

5            As noted, the unclaimed portion of the proceeds set aside for the FLSA claims

6    reverts to defendants.  Although the court has expressed some concern about this in its prior

7    orders, class counsel has not discussed this in the current moving papers.

8            When a statute's objectives include deterrence, as does the FLSA's, "it would

9    contradict these goals to permit the defendant to retain unclaimed funds." *Six (6) Mexican*

10   *Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990).  It is true that by not

11   returning claim forms and thus by not opting-in to the FLSA collective action, the workers retain

12   their ability to bring individual suit against defendants.  Nevertheless, given the relatively small

13   potential recovery, it is unlikely they will do so.  This factor does not favor the settlement.

14           Despite the fact that the reversionary aspect of the FLSA does not favor settlement

15   and there are some neutral factors, consideration of the other factors bearing on the question of

16   settlement persuades the court the overall settlement is fair.

17   V.  THE INCENTIVE PAYMENT[1]

18           Although class representatives may be eligible for reasonable incentive payments,

19   the court must evaluate the request "using 'relevant factors includ[ing] the actions the plaintiff

20   has taken to protect the interests of the class, the degree to which the class has benefitted from

21   those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation

22   . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton v. Boeing Co.*, 327 F.3d 938, 976

23   (9th Cir. 2003) (alteration in original) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir.

24   1998)); *see also Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 257 (E.D. Penn. 2011) (listing

---

26   [1] Although the court must evaluate overall fairness, it may separately evaluate the requests
     for incentive payment and attorneys' fees because the settlement says that plaintiff "may move
27   the Court for an award not to exceed $10,000" and "an award of up to one-third of the Maximum
     Settlement Payment" for attorneys' fees.  ECF No. 52-1 ¶¶ 44, 45; *see West v. Circle K Stores,*
28   *Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *12, n.10 (E.D. Cal. Jun. 13, 2006).

1   the factors for evaluating incentive payments to include "[t]he risk to the plaintiff . . . both

2   financially and otherwise; the notoriety and/or personal difficulties encountered by the

3   representative plaintiff; the extent of the plaintiff's personal involvement in the lawsuit in terms

4   of discovery responsibilities and/or testimony at depositions or trial; the duration of the litigation;

5   and the plaintiff's personal benefit (or lack thereof) purely in his capacity as a member of the

6   class") (internal citation omitted).  "[D]istrict courts must be vigilant in scrutinizing all incentive

7   awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v.*

8   *Experian Info. Solutions Inc*., 715 F.3d 1157, 1164 (9th Cir. 2013).

9        Under California law, criteria governing the award of incentive payments include

10  "'1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the

11  notoriety and personal difficulties encountered by the class representative; 3) the amount of time

12  and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal

13  benefit (or lack thereof) enjoyed by the class representative as the result of the litigation.'" *In re*

14  *Cellphone Fee Termination Cases*, 186 Cal. App. 4th 1380, 1394-95 (2010) (quoting *Van*

15  *Vranken v. Atl. Richfield Co*., 901 F. Supp. 294, 299 (N.D. Cal. 1995)).  Such awards "must not

16  be disproportionate to the amount of time and energy expended in pursuit of the lawsuit." *Id*. at

17  1395.

18        In the order giving preliminary approval to the settlement, the court expressed

19  some unease at the paucity of information presented in support of the incentive payment.  ECF

20  No. 58 at 16.  The showing  in connection with this motion has not added much, if any, detail.  In

21  fact, there is no declaration from Khanna herself, only counsel's declaration, describing the

22  genesis of the lawsuit in Shashi Khanna's analysis of her husband's pay stubs and her

23  involvement in the lawsuit, including fifteen telephone conferences; and then Priyanka Khanna's

24  meeting with attorneys, participating in a dozen telephonic conferences as well as attending the

25  all-day mediation which led to the settlement.  Decl. of Jeffrey Edwards, ECF No. 67-1 ¶¶ 4-5.

26        Counsel has presented no evidence that the named plaintiff was exposed to or

27  suffered any personal risk as a result of her participation in this action; indeed as she was never

28  employed by Inter-Con, there could be and was no risk of retaliation.  Although counsel describes

1    the meetings and telephone calls plaintiff participated in, he does not suggest how many hours

2    Khanna spent on the litigation, apart from the all-day mediation.  None of this appears to be

3    outstanding service to the class, but rather the actions any litigant would take in pursuing her

4    claim.  Moreover, there is no evidence Khanna "spent more time assisting counsel than in the

5    average case." *Monterrubio.*, 291 F.R.D. at 463 (reducing $7500 incentive payment in part

6    because no proof plaintiff spent extraordinary amounts of time assisting counsel); *cf. Greko,* 2012

7    WL 1789602, at *13 (approving $5000 incentive payment for named plaintiff who spent over 100

8    hours on the case).

9           One other consideration suggests the $10,000 incentive payment is too high.

10   Khanna will receive the largest payout from the settlement:  her portion of the state law claims,

11   before the distribution of the unclaimed portion, is $12,880.73 and is $23,662.92 after the

12   unclaimed funds are apportioned, while her share of the FLSA funds is $8,138.76.  Her total

13   distribution will be $31,801.68, the highest payout from the settlement.  Although her actions

14   served the class, they also served her financial interest in the lawsuit.

15          Finally, plaintiff has not cited any cases approving such a large incentive payment

16   for the representative in such a small class with a relatively modest payout.  Accordingly, the

17   court reduces the incentive payment in this case to $2,500.

18   VI.  ATTORNEYS' FEES AND COSTS

19          The agreement provides Inter-con will not oppose counsel's application for an

20   award of $130,000, or one third of the settlement fund, to cover attorneys' fees and costs, the

21   administrator's fees, and the incentive payment.

22          Even when the parties have agreed on an amount, the court must award only

23   reasonable attorneys' fees in a class action settlement.  *In re Bluetooth Headset Prod. Liab. Litig.*,

24   654 F.3d 935, 941 (9th Cir. 2011); Fed. R. Civ. P. 23(h) ("In a certified class action, the court may

25   award reasonable attorney's fees and nontaxable costs that are authorized by law or by the

26   parties' agreement.").  "Where a settlement produces a common fund for the benefit of the entire

27   class, courts have discretion to employ either the lodestar method or the percentage-of-recovery

28   method." *Id.*  If the court employs the percentage-of-recovery method, "calculation of the

1    lodestar amount may be used as a cross-check to assess the reasonableness of the percentage

2    award." *Adoma*, 913 F. Supp. 2d at 981.  The court must employ the method that will produce a

3    reasonable result.  *Bluetooth*, 654 F.3d at 941.

4              "'The FLSA . . . requires that a settlement agreement include an award of

5    reasonable fees.'"  *Almodova*, 2010 WL 1372298, at *6 (quoting *Lee v. The Timberland Co*.,

6    No. C 07-2367 JF, 2008 WL 2492295, at *2 (N.D. Cal. June 19, 2008)); 29 U.S.C. § 216(b)

7    ("The court in such action shall, in addition to any judgment awarded to the plaintiff . . . allow a

8    reasonable attorney's fee to be paid by the defendant, and the costs of the action.").  The FLSA

9    "requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel

10   is compensated adequately and that no conflict of interest taints the amount the wronged

11   employee recovers under a settlement agreement."  *Silva v. Miller*, 307 F. App'x 349, at *2 (11th

12   Cir. 2009) (unpublished).

13             Finally, when state substantive law applies, state law also governs the award of

14   attorneys' fees.  *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002).  In California,

15   the primary method for calculating attorneys' fees is the lodestar method, though in some

16   circumstances a court may award a percentage of a common fund.  *In re Consumer Privacy*

17   *Cases*, 175 Cal. App. 4th 545, 556-57 (2009); *see also Serrano v. Priest*, 20 Cal. 3d 25, 34-35

18   (1977) (discussing the "common fund" exception to the usual rule that each party bears its own

19   attorneys' fees).  California courts also employ the lodestar as a cross-check when the common

20   fund method is used, with the ultimate goal of assessing the reasonableness of the fees.  *See Sutter*

21   *Health Uninsured Pricing Cases*, 171 Cal. App. 4th 495, 512 (2009).

22             In the Ninth Circuit, the benchmark for percentage of recovery awards is 25

23   percent of the total settlement award, which may be adjusted up or down.  *Hanlon*, 150 F.3d at

24   1029; *Ross v. U.S. Nat'l Bank Ass'n*, No. C 07-02951 SI, 2010 WL 3833922, at *2 (N.D. Cal.

25   Sep. 29, 2010) (stating that selection of benchmark must be based on all circumstances of the

26   case).  Although California courts have mentioned the Ninth Circuit's 25 percent benchmark, they

27   have not explicitly adopted it.  *See, e.g.*, *Lealao v. Beneficial Cal., Inc*., 82 Cal. App. 4th 19, 24

28   n.1 (2000) (quoting Ninth Circuit law on the benchmark); *see also Consumer Privacy Cases*, 175

1  Cal. App. 4th 545, 558 n.13 (2010) (quoting *Lealao* as establishing the benchmark at 25 percent).

2  As this court will use 25 percent as a starting point for the federal law claims, it will also do so as

3  part of its state law analysis.  *See Schiller v. David's Bridal*, No. 1:10-cv-00616 AWK SKO, 2012

4  WL 2117001, at *17 (E.D. Cal. Jun. 11, 2012) (using the federal benchmark as an "assessment

5  tool" even though it is not required).

6          Factors that may justify departure from the benchmark include:  (1) the result

7  obtained; (2) counsel's efforts, experience, and skill; (3) the complexity of the issues; (4) the risks

8  of non-payment assumed by counsel; (5) the reaction of the class; (6) non-monetary benefits, such

9  as clarification of certain points of law; and (6) comparison with the lodestar.  *Vizcaino*, 290 F.3d

10  1048-50; *Schiller*, 2012 WL 2117001, at *16 (California courts consider novelty of the questions,

11  the skill displayed in presenting them, the extent to which litigation precluded other employment

12  by the lawyers, and the contingent nature of the fee award).  Additional factors include whether

13  counsel receives a disproportionate distribution of the settlement, whether the parties have agreed

14  to a "clear sailing" arrangement whereby defendant will not object to counsel's request for fees,

15  and whether any fees not awarded will revert to defendants rather than be added to the class fund.

16  *Bluetooth*, 654 F. 3d at 947.

17          A.  The Result Obtained

18          Counsel secured a settlement of approximately 35 percent of what their accountant

19  estimated to be the maximum recovery on the state law overtime claims and 39 percent of the

20  FLSA claims, not enhanced for liquidated damages.  Although the settlement results in an

21  average recovery of approximately $4,000 per claimant, there is a wide disparity in the amount of

22  the claims, with the biggest recovery going to the named plaintiff even before the incentive fee,

23  while the lowest claim amounts to only several hundred dollars.  While this is a favorable result,

24  it is not extraordinary and so does not support departing from the benchmark.  *See, e.g,. Adoma*,

25  913 F. Supp. 2d at 982 (finding that $2,000 average recovery for class members in wage and hour

26  case did not justify increasing the benchmark).

27  /////

28  /////

B.  The Risks Involved

As noted in previous orders, defendants  had challenged plaintiff's status as class representative, a challenge that would have been renewed had litigation continued.

Moreover, recovery on a portion of the FLSA claim was uncertain given the statute of limitations and the limitations on liquidated damages.  The statute of limitations for most FLSA claims is two years, which extends to three if the violations are willful; a violation is willful if the employer knew of or recklessly disregarded the risk that its conduct violated the FLSA.  *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988).  It was possible plaintiff would not have been able to show any FLSA violations were willful, which would have reduced the  award.  Similarly, under  the FLSA, "[a]n employer who violates the overtime law is liable not only for the unpaid overtime compensation but also 'an additional equal amount as liquidated damages.'"  *Chao v. A-One Med. Servs*., 346 F.3d 908, 920 (9th Cir. 2003) (quoting 29 U.S.C. § 216(b)).  A court may deny the liquidated damage award if it determines the employer acted in good faith, with objectively reasonable grounds for its belief that it had not violated the FLSA. *Id*.  Although "[d]ouble damages are the norm," the court had the discretion to deny the liquidated damages award, which would further reduce the recovery.

In addition, during the pendency of the litigation, the California Supreme Court decided *Pineda v. Bank of Am.*, 50 Cal. 4th 1389, 1393 (2010), which found waiting time penalties under California Labor Code § 203 are not restitutionary and so are not recoverable under the UCL.  Nevertheless, *Pineda*'s holding did not disturb plaintiff's remedy under section 203 of the Labor Code itself, which provides for thirty days of additional wages for an employee who does not promptly receive all wages due upon termination.  Accordingly, this was not a significant risk.

More significant was the possibility that the release of claims in the *Adams* litigation would bar overtime claims arising before March 1, 2008.

Counsel suggests the uncertainty about meal periods, resolved in *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012), was an additional risk factor in this litigation.  However plaintiff did not bring a claim based on missed meal periods; rather the court

1    asked about the value of any such claims because they were specifically included in the release

2    binding class members.

3            Nevertheless, particularly in light of the uncertainty about the scope of the *Adams*

4    release, counsel faced some risk in pursuing the litigation, though these did not render the

5    litigation "extremely risky." *Monterrubio*, 291 F.R.D. at 457; *McKenzie v. Fed. Express Corp.*,

6    No. CV 10-02420, 2012 WL 2930201 (C.D. Cal. July 2, 2012) (finding risk not extraordinary

7    despite defendant's numerous defenses to the action, including a challenge to the class

8    certification.).

9            C.  Counsel's Efforts, Experience and Skill; Complexity of the Issues.

10           As noted, the firm representing plaintiff focuses on employment law and has

11   brought a number of other wage-and-hour class actions.  Nevertheless, while showing that Inter-

12   Con and HSSG qualified as a common employer for overtime purposes might have taken some

13   finesse, the issues presented by this case were not complex.  *See McKenzie*, 2012 WL 2930201, at

14   *10 ("wage and hour litigation is not as legally complex as other types of litigation that often

15   generate a common fund").

16           Counsel notes that wage and hour litigation "requires a large investment of time to

17   determine the duties of class members, to take and defend depositions related to such duties . . .

18   and to identify and interview possible witnesses or experts."  ECF No. 68 at 10.  The record in

19   this case, however, does not show such expenditures of time, as the billing records do not reflect

20   extensive discovery or witness interviews.  *Monterrubio*, 291 F.R.D. at 457 (counsel's review of

21   documents and interviews of seven class members did not support finding that garden-variety

22   wage and hour case required exceptional skill).  Moreover, the case was not heavily litigated:

23   counsel responded to a single motion to dismiss and engaged in limited discovery before moving

24   to mediation and settlement.  This does not favor departing from the benchmark.  *See Dickerson*

25   *v. Cable Commc'ns, Inc*. No. 3:12-CV-00012-PK, 2013 WL 617460, at *5 (D. Or. Nov. 25, 2013)

26   (finding upward adjustment of benchmark not warranted when litigation was not lengthy and

27   settlement occurred before any contested class certification); *Navarro v. Servisair*,

28   /////

1   No. C08-02716, 2010 WL 1729538, at *3 (N.D. Cal. Apr. 27, 2010) (finding rapidity of

2   settlement and lack of extensive motion practice does not favor departing from the benchmark).

3          D.  Other Considerations

4          Although no member of the class has objected to the requested fees, this factor is

5   not extraordinary.  Moreover, the litigation did not generate any non-monetary benefits, such as a

6   clarification of gray areas of labor law.  Finally counsel has presented no evidence about the risk

7   of non-payment nor the impact of this case on the firm's ability to undertake employment.

8          E.  Lodestar Cross-Check

9          Counsel contends that the lodestar cross-check shows that the percentage of fees

10   they seek is reasonable.  Ultimately, however, the lodestar figures do not assist them.

11          In California, "the fee setting inquiry . . . ordinarily begins with the 'lodestar,' i.e.

12   the number of hours reasonably expended multiplied by the reasonable hourly rate."  *PLCM Grp.,*

13   *Inc. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000).  In calculating the hours reasonably expended, a

14   court should not include "'padding' in the form of inefficient or duplicative efforts."  *Ketchum v.*

15   *Moses*, 24 Cal. 4th 1122, 1132 (2001).  In determining the reasonable hourly rate, the court

16   should adopt "that prevailing in the community for similar work."  *PLCM*, 22 Cal. 4th at 1995;

17   *Sunstone Behavioral Health Inc. v. Alameda Cnty. Med. Ctr.*, 646 F. Supp. 2d 1206, 1213 (2009).

18          Similarly, the Ninth Circuit uses the lodestar method for determining a reasonable

19   attorneys' fee.  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).  In

20   calculating an attorneys' fee award under this method, a court must start by determining how

21   many hours were reasonably expended on the litigation, and then multiply those hours by the

22   prevailing local rate for an attorney of the skill required to perform the litigation.  *Id.*

23          When a court uses the lodestar as a cross-check to a percentage claim of fees, it

24   need only make a "rough calculation."  *Schiller*, 2012 WL 2117001, at *22.  Doing so in this

25   case, however, is extremely difficult.

26          For example, in one section of the moving papers, counsel asserts the lawyers and

27   paralegals of the firm have spent 1,023 hours, for a total of $227,410 in fees, without providing

28   calculations justifying this claim.  ECF No. 68 at 6.  In another portion of the motion, counsel

21

1    claims that applying rates of $300 an hour for a partner, $200 an hour for an associate, and $100

2    an hour for a paralegal, the firm is entitled to $197,040 in fees. *Id*. at 15.  Counsel does not

3    provide a chart or list, however, showing how many hours each partner, associate, and paralegal,

4    worked on this case, so the court cannot check counsel's calculations without a dissection of 74

5    pages of billing records.  Moreover, the total number of hours listed at the end of these records is

6    856.8, not 1,023.  ECF No. 68-1 at 80.

7           A quick perusal of the billing relating to two tasks further shows that the lodestar

8    does not support the claimed percentage, as these records show four attorneys spent

9    approximately 111 hours to investigate, research and draft a thirty-six page complaint and

10   approximately 119 hours to prepare a twenty-three page opposition to a sixteen page motion to

11   dismiss or strike.  These figures would not be reasonable even for a firm not claiming an expertise

12   in labor law.

13          The court acknowledges that incentives may be needed to encourage lawyers to

14   undertake relatively modest class wage-and-hour litigation, but that alone does not justify

15   departing from the benchmark.  Accordingly, counsel is entitled to a total of $97,500 or 25

16   percent of the total settlement fund, to satisfy fees and costs.  The remaining $32,500 is to be

17   distributed to the class.

18       F.  Costs

19          Counsel has submitted records showing the firm incurred $38,974.24 in costs.  The

20   largest expenditure was $23,772 for the accountant who analyzed Inter-Con's records and

21   provided models for liability and recovery.  The court cannot say this claimed cost is

22   unreasonable.  *See Kim v. Space Pencil, Inc.*, No. C 11-03796 LB, 2012 WL 5948951, at *8 (N.D.

23   Cal. Nov. 28, 2012) (approving $15,000 for a forensic accountant).

24          The costs also include the mediator's fee; courts routinely approve reimbursement

25   of this cost. *See, e.g.*, *Pierce v. Rosetta Stone, Ltd.*, Case No: C 11–01283 SBA, 2013 WL

26   5402120, at *6 (N.D. Cal. Sept. 26, 2013).

27          Counsel seeks reimbursement of $5,435.22 for Westlaw online research.  Some

28   courts routinely award this as a cost, while others find that "charging separately for use of a

1    research service is akin to charging for the use of a case law reporter." *Carpenters Health &*

2    *Welfare Fund v. Coca-Cola Co.*, 587 F. Supp. 2d 1266, 1272 (N.D. Ga. 2008); *but see Dickerson*,

3    2013 WL 6178460, at *5 (approving costs for legal research). As counsel has presented neither

4    authority nor argument for approving these costs, the court declines to award them.

5            Finally, counsel seeks $1,192 in costs for in-house investigation. As these are part

6    of the firm's overhead expenses, the court does not find these costs to be reasonable. *In re CV*

7    *Therapeutics, Inc., Sec. Litig.*, No. C 03-3709 SI, 2007 WL 1033478, at *2 (N.D. Cal. Apr. 4,

8    2007).

9            Accordingly, the court finds $32,347.02 in costs to be reasonable.

10       G. Administrator's Award

11           The Class Administrator's fee of $7,000 is reasonable.

12           From the $97,500 set aside for fees and costs, the court awards $32,347.02 in costs

13   to class counsel, $7,000 in fees to the Class Administrator, and a $2,500 incentive award to the

14   named plaintiff, for a total of $43,847.02, leaving a fee award of $53,652.98.

15           For the reasons set forth above, IT IS ORDERED that plaintiff's motion for final

16   approval of the class and collective action settlement is hereby GRANTED.

17           IT IS FURTHER ORDERED that:

18           1. Solely for the purpose of this settlement and under the authority of Federal Rule

19   of Civil Procedure 23 and FLSA § 216(b), the court hereby certifies the following class: all

20   current and former hourly Security Officers who performed work for both Inter-Con and the

21   corporation, ICSS Holding Corp., dba Healthcare Security Services Group during the same

22   workweek ("overlapping workweeks") in California and had combined hours of greater than 8 on

23   any day of such overlapping workweek or greater than 40 for such overlapping workweek for

24   which they were not paid overtime premiums for all combined overtime hours during those

25   overlapping workweeks ("qualifying overlapping workweeks"), at any time from August 11,

26   /////

27   /////

28   /////

2005 (four years prior to the filing of the Action) to February 26, 2009.  Specifically the court finds:

        a.  the settlement class members to be so numerous that joinder would be impracticable;

        b.  there are questions of law and fact common to the settlement class that predominate over any individual questions;

        c.  claims of the named plaintiff are typical of the claims of the settlement class;

        d.  the named plaintiff and class counsel have fairly and adequately represented and protected the interests of the settlement class;

        e.  a class action is superior to other available methods for the fair and efficient adjudication of the controversy; and

        f.  common issues predominate.

    2.  The court appoints the named plaintiff, Priyanka Khanna, as representative for the class and finds she meets the requirements of Rule 23 and § 216(b);

    3.  The court appoints the following lawyers as counsel to the settlement class and finds that counsel meets the requirements of Rule 23 and § 216(b):  Mastagni, Holstedt, Amick, Miller & Johnsen;

    4.  The settlement agreement's plan for class notice is the best notice practicable under the circumstances and satisfies the requirements of due process, Rule 23, and § 216(b). The plan is approved and adopted.  The Notice of Class and Collective Action Settlement complies with Rule 23(c)(2), Rule 23(e) and § 216(b) and is approved and adopted;

    5.  The parties have executed the notice plan approved in the court's preliminary approval order, in response to which 18 collective action class members submitted an opt-in/claim form, and no class members submitted an opt-out form.  The parties and counsel took sufficient efforts to locate and inform all putative class members of the settlement and given that no class members have objected to the settlement, the court finds and orders that no additional notice to the class is necessary;

6. As of the date of the entry of this order, plaintiff and all class members hereby do and shall be deemed to have fully, finally, and forever released settled and discharged Inter-Con and its successors, assigns, and its current and former employees and directors as well as the individual defendants from any and all claims, known or unknown, that were brought or could have been brought in the operative complaint in the action, including but not limited to, statutory, constitutional, contractual or common law claims for wages, damages, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, for the following categories of allegations: (a) allegations for unpaid wages; unpaid overtime compensation; unpaid hourly premiums; failure to pay overtime compensation based on the regular rate of pay or otherwise; and any and all claims for the failure to provide meal and/or rest periods; and (b) any and all claims for recordkeeping or pay stub violations or waiting time penalties or any other statutory penalties ("Released Claims"), arising from the period from August 11, 2005 through the date of final court approval of the settlement ("Released Period"). Released claims include claims meeting the above definition under any and all applicable statutes (other than the FLSA), including without limitation the California Labor Code (including, but not limited to, sections 201, 202, 203, 204, 210, 218.6, 226, 226.3, 227.3, 510, 511, 558, 1174, 1174.5, 1194, 1198, 1199 and 2698, *et seq.*); the wage orders of the California Industrial Welfare Commission; California Business and Professions Code section 17200, *et seq.*; and the California common law of contract;

7. Inter-Con shall transfer the settlement funds, including any attorneys' fees and costs and the incentive payment, to the Claims Administrator within thirty days of the date of the order;

8. No later than sixty days after the date of this order, the Claims Administrator shall disburse the settlement amount due to each class member, the incentive payment to the named plaintiff, and attorneys' fees and costs;

9. The named plaintiff is entitled to an incentive payment of $2,500;

10. Class counsel is entitled to fees and costs in the amount of $95,000;

/////

11.  Upon the distribution of the settlement payments, attorneys' fees and costs, and the incentive payment, defendant, the released parties and defendant's counsel shall have no further liability or responsibility to class counsel, plaintiff, or any other class member; and

12.  The action is dismissed with prejudice.

DATED:  April 8, 2014.

_____
UNITED STATES DISTRICT JUDGE